## Commonwealth vs. William Clark.

Hampden. March 10, 2006. - May 8, 2006.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, & Cordy, JJ.

*Controlled Substances. False Impersonation and Identity Fraud. Statute,* Construction. *Jury and Jurors. Constitutional Law,* Jury. *Practice, Criminal,* Jury and jurors, Challenge to jurors.

Evidence introduced at a criminal trial was sufficient to survive the defendant's motion for required findings of not guilty on indictments charging distribution of heroin [623-624] and possession with intent to distribute heroin and cocaine [624-625].

Discussion of G. L. c. 268, § 34A, which proscribes any knowing and wilful giving of a false name to a law enforcement officer or official following an arrest, and statement of what the Commonwealth must prove in order to establish a violation of that statute. [625-627]

Evidence presented at a criminal trial was sufficient to establish a prima facie case of a violation of G. L. c. 268, § 34A, which proscribes any knowing and wilful giving of a false name to a law enforcement officer or official following an arrest. [627-628]

At a criminal trial, the judge erred by declining to excuse for cause a juror who believed that African-Americans as a group were more likely to commit crimes because of their economic status than people of other racial or ethnic groups, where the juror's answers to the judge's questions concerning those views were not sufficient to resolve concerns about potential prejudice to the defendant. [628-630]

Indictments found and returned in the Superior Court Department on September 19, 2002.

The cases were tried before *C. Brian McDonald,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Angela G. Lehman* for the defendant.

*Bethany C. Lynch,* Assistant District Attorney, for the Commonwealth.

Spina, J. The defendant was convicted of three drug offenses involving possession with intent to distribute heroin and cocaine and distribution of heroin. He also was convicted of giving a

false name to a police officer after arrest, a violation of G. L. c. 268, § 34A.[1] On appeal he challenges the denial of his motion for required findings of not guilty. He also alleges that the judge erred (1) by refusing to excuse for cause a juror who demonstrated racial prejudice against African-Americans (the defendant is an African-American), and (2) by allowing the prosecutor to exercise his peremptory challenges to exclude two African-Americans because they were young and either a student or unemployed. We transferred the case to this court on our own motion. We conclude that there was no error in the denial of the defendant's motion for required findings. However, we also conclude that the defendant is entitled to a new trial because the juror's answers to the judge's questions concerning the juror's views regarding African-Americans were not sufficient to resolve concerns about potential prejudice.

1. *Facts.* The jury could have found the following facts beyond a reasonable doubt. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 676-678 (1979). On August 1, 2002, at about 9:30 A.M., two uniformed Springfield police officers in a marked cruiser were on patrol in the Bay Street area of Springfield, a "high profile" area for criminal activity.

One officer noticed the defendant, whom he recognized from past contact, although he could not remember his name. The defendant was standing near a place known as the "bait shop" on Bay Street, talking with a Hispanic man. When the defendant saw the police car, he pulled his hand back from the other man and then turned and walked into the "bait shop." At the same time the other man started walking away. The officers continued driving as if they had not noticed anything suspicious and turned down a side street. They left the cruiser and walked to a corner with a clear view down Bay Street. The defendant and the other man were standing near a Ford Explorer sport utility vehicle parked on Bay Street about one hundred feet away.

The defendant took a key from his pocket and opened a pas-

---

[1]General Laws c. 268, § 34A, states: "Whoever knowingly and willfully furnishes a false name or Social Security number to a law enforcement officer or law enforcement official following an arrest shall be punished . . . . The court may order that restitution be paid to persons whose identity has been assumed and who have suffered monetary losses as a result of a violation of this section."

senger side door of the Explorer. He leaned inside, causing his upper body momentarily to disappear from view. He stepped away from the car, closed the car door, and said something to the other man. Their hands met briefly. The other man then handed the defendant what appeared to be money: a piece of green paper, which the defendant put in his pocket.

The officers returned to their cruiser, drove to the area where the two men were standing, and stopped the police car in front of the Explorer to prevent it from being moved. As the officers approached the two men, the Hispanic man dropped a small blue packet on the ground and fled. The packet had a "Blue's Clues" logo which, at the time, was a common packaging for heroin. The quantity was consistent with a street value of ten dollars' worth of heroin, and the contents later tested positive for heroin. At about the same time, the defendant threw a small object through a partially open window of the Explorer and walked in the opposite direction. One officer looked through the passenger side door window of the Explorer and saw some small blue packets tightly wrapped in a rubber band. The packets were consistent with packets of heroin selling for ten dollars each.

The defendant was ordered to stop walking. He submitted and was handcuffed. He had $662 and a set of car keys in his pockets. The keys fit the Explorer. A search of the Explorer resulted in the seizure of five small blue packets previously seen through the window. They all had the "Blue's Clues" logo printed on them, and their contents later tested positive for heroin. A cigarette box containing eight separately wrapped chunks of what later tested positive for cocaine was seized from the center console. The owner of the Explorer could not be determined because the attached license plate had been canceled and no owner was associated with the vehicle identification number.

The defendant told the officers after his arrest that his name was Jarod Bailey and that he was born on May 26, 1962. Police records indicated this name was an alias. The defendant's fingerprints, taken after his arrest on August 1, 2002, matched the fingerprints taken from him on March 20, 2001, under the name Jarod Bailey. Both sets of prints also matched fingerprints

taken from the defendant under the name William Clark on four prior occasions. At no point did the defendant tell police that his name was William Clark.

2. *Required findings.* The defendant argues that his motion for required findings of not guilty at the close of the Commonwealth's case should have been allowed as to all indictments. We review under the standard set forth in *Commonwealth* v. *Latimore, supra.*

a. *Distribution indictment.* The defendant first contends that the evidence was insufficient to show that he distributed heroin. Relying primarily on *Commonwealth* v. *Tripp*, 14 Mass. App. Ct. 997, 998 (1982), and *Commonwealth* v. *Senati*, 3 Mass. App. Ct. 304, 305-306 (1975), the defendant argues that the evidence is equally consistent with his being the purchaser of the heroin as it is with his being the seller. We disagree.

The defendant does not dispute that the evidence demonstrates a sale of illegal drugs. Both participants were holding heroin packaged in "Blue's Clues" paper when police appeared. The defendant threw his bundle in the Explorer and the Hispanic man dropped his single packet to the ground before fleeing. One officer observed money pass between the two men after the transfer of drugs took place.

The cases on which the defendant relies, *Commonwealth* v. *Tripp*, *supra*, and *Commonwealth* v. *Senati*, *supra*, involve facts that were inconclusive as to the identity of the buyer and the seller in a drug transaction. By contrast, the facts in this case support an inference that the defendant was the seller of the drugs and do not support an inference that he was the buyer of the drugs. There were two exchanges between the defendant and the Hispanic man. The police could not see what, if anything, passed between them the first time their hands met, or in which direction any item was passed. However, the second exchange consisted of a transfer of what appeared to be money from the Hispanic man to the defendant. The defendant put the money in his pocket. When he was arrested, the defendant had only money and keys in his pockets. The only reasonable inference is that the first exchange involved the passing of drugs from the defendant to the Hispanic man, and the sale was consummated when the defendant pocketed money subsequently

given to him by the Hispanic man. Where the uncontroverted evidence demonstrates that the defendant received the money in this drug sale, the evidence is consistent with a theory that he was the seller of the heroin the Hispanic man threw down, and inconsistent with a theory that the defendant was the buyer of the heroin he threw into the Explorer.

b. *Possession with intent to distribute.* Where the evidence is sufficient to support a guilty verdict as to the indictment alleging distribution of heroin, that same evidence is sufficient to support a conviction on the indictment alleging possession of heroin with intent to distribute. It is reasonable to infer that, where the defendant had just sold one packet of heroin from the bundle of similar packets he possessed, he intended to sell more heroin from the same bundle. See *Commonwealth* v. *Rivera*, 44 Mass. App. Ct. 452, 454 (1998).

The evidence supporting the indictment alleging possession of cocaine with intent to distribute is as follows. Immediately before selling heroin to the Hispanic man, the defendant was seen unlocking the Explorer and then leaning inside. Although the Commonwealth was unable to establish ownership of the Explorer, it was sufficient for purposes of this prosecution to show by his possession and use of the key to unlock the Explorer that the defendant had control of the place where the drugs were kept. See *Commonwealth* v. *Dion*, 31 Mass. App. Ct. 168, 175-176 (1991). It is reasonable to infer that, when the defendant leaned inside the Explorer (and his upper body disappeared from view) just before the sale of heroin to the Hispanic man, he was retrieving the bundle of heroin packets from the center console where it was kept concealed from public view. Because the cocaine was found in the center console, it is reasonable to infer that he knew of the cocaine and at least had constructive possession of it. Contrast *Commonwealth* v. *Movilis*, 46 Mass. App. Ct. 574 (1999) (evidence insufficient to show driver of car knew of cocaine kept in secret compartment behind front passenger seat). The eight chunks of cocaine, identically packaged, each had a street value of twenty dollars. Evidence of uniform packaging is relevant to the question of intent to distribute. See *Commonwealth* v. *Johnson*, 410 Mass. 199, 202 (1991). The evidence regarding the immediately preceding sale

of heroin, which was kept in the same location as the cocaine, provides the final link in the chain of circumstantial evidence needed to survive the defendant's motion for a required finding of not guilty as to the indictment charging possession of cocaine with the intent to distribute. See *Commonwealth* v. *Rivera, supra.*

c. *False name indictment.* The defendant argues that his motion for a required finding of not guilty as to the indictment alleging a violation of G. L. c. 268, § 34A (false name), should have been allowed because the Commonwealth failed to prove his "true" name, and that the name he gave, Jarod Bailey, was "false."

General Laws c. 268, § 34A, was inserted by St. 1998, c. 397, § 2, which is titled "An Act related to false impersonation and identity fraud."[2] Section 1 of the Act inserted G. L. c. 266, § 37E. The primary, but not sole, focus of § 37E is (a) to criminalize the unauthorized use of someone else's personal identifying information to obtain fraudulently anything of value while posing as such other person, and (b) to criminalize the possession of such personal identifying information without authorization and with intent to pose as such other person to obtain fraudulently anything of value. It also criminalizes the misappropriation of such information to harass another. General Laws c. 268, § 34A, makes it a crime to give a false name to a law enforcement officer or official following an arrest. In addition, § 34A authorizes a judge to order restitution to a victim who suffers monetary loss as a result of a violation of that section.

General Laws c. 268, § 34A, does not define the term "false" name, and it does not use the term "true" name. We may look to preexisting common law as an aid to the construction of undefined terms in a statute. See *Commonwealth* v. *Colon,* 431 Mass. 188, 191 (2000). See also *Preston* v. *Board of Appeals of*

---

[2]The sparse legislative history of St. 1998, c. 397, suggests that both G. L. c. 266, § 37E, and G. L. c. 268, § 34A, were enacted together as parts of a unified response to the disruptive effect that identity fraud can have on persons whose personal identifying information is misappropriated for use on multiple fronts: the marketplace, the criminal justice system, and elsewhere. See Press Release of Senators Cheryl A. Jacques and James P. Jajuga, and Representative Paul E. Caron, March 2, 1998.

*Hull*, 51 Mass. App. Ct. 236, 243 (2001), citing 2B N.J. Singer, Sutherland Statutory Construction § 50.01, at 140 (6th ed. 2000) (Legislature presumed to have known common law when statute enacted). A statute will not be construed as being at odds with the common law "unless the intent to alter it is clearly expressed." *Commonwealth* v. *Burke*, 392 Mass. 688, 690 (1984), quoting *Commonwealth* v. *Knapp*, 9 Pick. 495, 514 (1830).

"[A]t common law a person may change his name at will, without resort to legal proceedings, by merely adopting another name, provided that this is done for an honest purpose." *Merolevitz, petitioner*, 320 Mass. 448, 450 (1946). See *Secretary of the Commonwealth* v. *City Clerk of Lowell*, 373 Mass 178, 184-185 (1977). A person may be known by, and use, more than one name, and the business he transacts under such names will be valid and binding if unaffected by fraud. See *Lord* v. *Cummings*, 303 Mass. 457, 458 (1939). A court looks to the particular transaction and asks whether the name is used "in good faith by the party adopting it as a descriptio personae." *William Gilligan Co.* v. *Casey*, 205 Mass. 26, 31 (1910). Based on a person's right to use any name provided it is for an honest purpose, we conclude that, for purposes of G. L. c. 268, § 34A, a false name is one that a person has assumed for a dishonest purpose. In the context of the statute, dishonest purposes include, without limitation, concealing one's criminal record for purposes of being charged (avoidance of multiple offender status), concealing one's criminal record for purposes of bail, concealing one's identity to avoid answering to an outstanding warrant, or creating a new identity with the intent to default and avoid prosecution.

A prosecution under § 34A that involves false impersonation, as contemplated by St. 1998, c. 397, does not necessarily require the Commonwealth to prove a defendant's "true" name in order to prove that a defendant used a false name, as the defendant contends. The Commonwealth could show, through the testimony of the one impersonated, that the name (and presumably other identifying information) given by the defendant at the time of arrest belongs to the person he impersonated. The Commonwealth could thereby prove that, whatever a defendant's true name, it was not the name he gave when arrested.

The broad language of G. L. c. 268, § 34A, is not limited to cases of false impersonation or identity theft, and instead proscribes any knowing and wilful giving of a false name to a law enforcement officer or official after arrest.[3] Prosecutions under § 34A that do not involve false impersonation, but rather the use of a name that has been fabricated, may entail different proof in order to show that the name given to the police was false.[4] This is such a case. Without defining the term, the Commonwealth contends that it is virtually impossible to prove anyone's "true" name because governmental agencies must rely on the representation of the individual as to his identity. The Commonwealth asserts that because at common law an individual's name is whatever he adopts and represents to the community at large, the defendant's true name is deemed to be William Clark, the name he used in four earlier dealings with police. The Commonwealth suggests that the statute is thus consistent with the common law.

The defendant contends that the Commonwealth's theory is problematic for two reasons. First, the common law does not restrict a person to only one name, and the defendant previously had used the name Jarod Bailey in his dealings with the police. Thus the element of dishonesty that might have existed when he first used that name is no longer viable.[5] Second, without proof of the defendant's true name, there is no way of knowing whether William Clark is a false name and Jarod Bailey is his true name. The issues raised by the defendant do not address the sufficiency of the evidence, but are questions of fact that are appropriately reserved for argument, as they were in this case.

The defendant's previous use of the name Jarod Bailey does not establish conclusively his intent to use this name for honest

[3]The legislative history also indicates that the Legislature sought to address the waste of police time and resources spent on record-keeping resulting from the use of false names during booking procedures. See Press Release, *supra.*

[4]Prosecutors may, of course, decide not to prosecute a defendant for use of a false name, but instead only pursue the usual course and offer evidence of use of a false name as consciousness of guilt. See, e.g., *Commonwealth* v. *Fancy*, 349 Mass. 196, 201 (1965).

[5]A defendant may offer evidence relevant to show an intent to use the current name for lawful purposes, and may offer evidence of his criminal record under a prior name to show that it was too insignificant to be material to the question of dishonesty.

purposes. His use of the name Jarod Bailey without disclosing his prior use of the name William Clark is consistent with an intent to conceal his earlier criminal history under the name William Clark. The fact that the defendant once presented himself to police as William Clark and was now presenting himself as Jarod Bailey, without disclosing his prior use of a different name, permits an inference that his failure to make such disclosure was for dishonest purposes, and a jury may be so instructed.[6] We provide a recommended instruction in an Appendix to this opinion. This evidence is sufficient to make out a prima facie case under G. L. c. 268, § 34A.

Finally, even if the name on the defendant's birth certificate were Jarod Bailey (a point on which there was no evidence), that would not establish conclusively his "true" name. The evidence that he presented himself to police as William Clark on four prior occasions would support an inference that he chose to discontinue the use of his given name, then chose to revive the name at a later time. See *Secretary of the Commonwealth* v. *City Clerk of Lowell, supra* at 185 ("So far as our cases suggest that a person has a 'legal name' or a name 'with legal effect,' different from the name he has lawfully chosen, those suggestions were not necessary to decision"). We perceive no conflict between the statute and the common law, and no clear legislative intent to abrogate the common law.

Whether the defendant used the name Jarod Bailey following his arrest on August 1, 2002, for a dishonest purpose was a question of fact for the jury. There was no error in the denial of the defendant's motion for required findings of not guilty.

3. *Refusal to excuse juror for cause.* The judge asked all potential jurors whether they believed African-Americans were more likely to commit crimes than other groups, and whether because a person was African-American that person was more likely to commit a crime. Juror X answered that she believed African-Americans as a group were more likely to commit

---

[6]We need not decide whether police may ask arrested persons for aliases as part of a "routine booking procedure" without first giving Miranda warnings, where the inquiry is intended to elicit an inculpatory response. See *Pennsylvania* v. *Muniz*, 496 U.S. 582, 601 (1990) (opinion of Brennan, J.); *Commonwealth* v. *Woods*, 419 Mass. 366, 372-374 (1995).

crimes because of their economic status than people of other racial or ethnic groups. When asked by the judge if this view would affect her ability to be impartial, she said she could be impartial. Pressed for an explanation, she said, "Because I think it would depend on the person's circumstances." The judge found the juror to be indifferent notwithstanding her view that African-Americans are more likely, because of economic circumstances, to commit crimes. He stated that her views did not disqualify her in this case. Defense counsel challenged the juror for cause, but the judge declined to excuse her for cause. The defendant then used his last peremptory challenge on juror X.

Thereafter, juror Y was selected, but not before defense counsel stated for the record that she would have exercised a peremptory challenge as to that juror had she not depleted her allotment. Juror Y had a friend who was a captain on the police department, and two other friends who were "sucked into cocaine," one of whom had committed suicide because of his drug problem.

The defendant argues that it was error for the judge not to excuse juror X for cause based on manifest prejudice, and that reversal is required without a showing of prejudice.

When a defendant uses a peremptory challenge to excuse a juror that the judge refused to excuse for cause and the defendant is later "forced to accept a juror whom he otherwise would have challenged peremptorily" but for want of a peremptory challenge, the correctness of the judge's refusal to excuse the former juror for cause is preserved for review. *Commonwealth* v. *Susi*, 394 Mass. 784, 789 (1985). If the judge's refusal to excuse the juror for cause is determined to be error, the defendant is entitled to a new trial without a showing of prejudice because in such circumstances the diminution of peremptory challenges is per se prejudicial. *Id.*

Article 12 of the Massachusetts Declaration of Rights guarantees the right of a criminal defendant to a trial by an impartial jury. *Id.* at 786. "The presence of even one juror who is not impartial violates a defendant's right to trial by an impartial jury." *Commonwealth* v. *Vann Long*, 419 Mass. 798, 802 (1995). A trial judge is accorded considerable discretion in

the jury selection process and his finding that a juror stands indifferent will not be disturbed except where juror prejudice is manifest. *Id.* at 803. In exercising discretion to ferret out possible juror bias, a judge must "be zealous to protect the rights of an accused." *Id.,* quoting *Wainwright* v. *Witt,* 469 U.S. 412, 430 (1985).

Although juror X represented that she could be impartial, she explained that her ability to be impartial with respect to her views about African-Americans "would depend on the person's circumstances." This response is ambiguous, and might have been an expression of racial stereotyping that could have affected the outcome of the case. Further questioning was required to resolve the ambiguity. Instead, the judge concluded only that her views did not disqualify her. The defendant was entitled to "a jury capable and willing to decide the case solely on the evidence before it," and not on a juror's preconceived notions about racial attributes. *Commonwealth* v. *Seabrooks,* 433 Mass. 439, 446 (2001), quoting *Smith* v. *Phillips,* 455 U.S. 209, 217 (1982). Based on the record before us, juror X could not be deemed impartial and should have been excused for cause. The defendant is entitled to a new trial.

We need not address the remaining issue argued by the defendant.

The judgments are reversed, the verdicts set aside, and the case is remanded for a new trial.

*So ordered.*

APPENDIX.

In prosecutions under G. L. c. 268, § 34A, a judge may instruct the jury with regard to the element of use of a false name, in the following manner:

"At common law a person may change his name at will, without resort to legal proceedings, by merely adopting another name, provided he is not using such name for a dishonest purpose. For purposes of G. L. c. 268, § 34A, a false name is one that a person has assumed for a dishonest purpose. Dishonest purposes include, but are not limited to, concealing one's criminal record to avoid being charged as a multiple offender, concealing one's criminal record to obtain more favorable bail consideration, concealing one's identity to avoid answering to an outstanding warrant, or creating a new identity with the

intent to default and avoid prosecution on the charge for which one has been arrested.

"If a person previously has identified himself to any police department under a name that is different from the name he used following the arrest in question and failed to disclose his prior use of a different name, you are permitted to infer that his failure to make such disclosure was for a dishonest purpose and that he was using a false name. You do not have to draw this inference, but you may do so. It is entirely up to you.

"The Commonwealth does not have to prove the defendant's true name. It must prove that he used a false name, that is, that he used a name for a dishonest purpose."