Commonwealth *v.* Beaz.

COMMONWEALTH *vs.* ALBERTO BEAZ.[1]

No. 06-P-203.

Suffolk. February 9, 2007. - July 2, 2007.

Present: LENK, MILLS, & GRAHAM, JJ.

*Evidence,* Hearsay, Testimonial statement, Spontaneous utterance. *Practice, Criminal,* Instructions to jury, Argument by prosecutor, Challenge to jurors, Assistance of counsel, New trial. *Jury and Jurors. Constitutional Law,* Jury, Assistance of counsel.

A police officer's testimony regarding his having observed witnesses at a crime scene as they pointed at certain individuals was properly admitted in evidence at a criminal trial, where the testimony about the pointing was not hearsay and where, in any event, any statements inherent in the pointing were not testimonial and would have qualified as excited utterances. [502-504]

There was no merit to a criminal defendant's claim that he was entitled to a new trial due to allegedly erroneous jury instructions. [504]

A criminal defendant who did not object at trial to improper comments in the prosecutor's summation failed to meet his burden to show that the error created a substantial risk of a miscarriage of justice. [504-505]

This court declined to review on direct appeal a claim of ineffective assistance of counsel raised by a criminal defendant on an incomplete record, where the preferred method for raising such a claim was through a motion for a new trial. [505-509]

INDICTMENTS found and returned in the Superior Court Department on November 18, 2004.

The cases were tried before *Margot Botsford,* J.

*Stella Robinson* for the defendant.

*Anne M. Thomas,* Assistant District Attorney (*Daniel P. Mulhearn,* Assistant District Attorney, with her) for the Commonwealth.

MILLS, J. A jury found the defendant guilty on indictments charging armed robbery, G. L. c. 265, § 17, and assault and bat-

---

[1]Also known as Alberto Baez.

tery by means of a dangerous weapon, G. L. c. 265, § 15A. In this appeal he claims (1) hearsay evidence was erroneously admitted; (2) counsel was ineffective for failure to challenge a juror for cause; (3) instructions given to the jury were inconsistent with the presumption of innocence; and (4) the prosecutor's closing argument was improper.[2] We decline to review the claim of ineffective assistance of counsel, and upon review of the remaining three issues, affirm.

1. *Background.* Raphael Zuniga (the victim) was robbed outside his apartment in Chelsea by a group of men on September 21, 2004. The men approached him and demanded money. He was pushed by one of them and attacked with an electronic stun gun.[3] The victim felt a trembling in his body, and apparently passed out. He was treated at the scene for injuries sustained during the attack, including a laceration to the right side of his neck. He could not remember anything else about the attack.

Sandi Galeano (Sandi), a first-floor tenant of the same apartment building, was a close family friend of the victim. She was in her room at the front of the house when she heard a noise outside her window. She looked out and saw five people on top of the victim hitting him and telling him to give them money. She also heard them say they were going to kill him. She yelled to her brother, Roger Galeano (Roger),[4] who was in a different room, and then ran outside, where she saw the defendant standing over the victim with a knife to his throat and the victim holding onto the defendant's sweater. When the victim saw Sandi and her brother, he let go of the defendant, who then ran, but tripped on something and fell between a car and the sidewalk, hitting his face against the car. Sandi and Roger stood on top of the defendant to hold him down until the police arrived. At trial, Sandi identified the defendant as the man she

---

[2]Prior to argument, the defendant withdrew a fifth claim regarding the sufficiency of the evidence on the armed robbery conviction.

[3]Although the victim does not recall the attack with a stun gun, another witness testified that she saw him attacked with a black electronic devise that "gave out lights in different colors."

[4]Roger Galeano did not testify. We use the witnesses's first names to avoid confusion.

saw standing over the victim with a knife, the man she and her brother had held, and the man the police had arrested.

Officer Brian Dunn of the Chelsea police department was the first officer to respond to the scene, and when he "first turned onto the street, there [were] a lot of people in the street all pointing towards two gentlemen." He saw one man on the ground and another man holding him down. Officer Dunn approached the two men and saw a knife on the ground about two to three feet away. The defendant had blood on his face. Officer Dunn took the defendant into custody and secured the knife. At trial, Officer Dunn identified the defendant as the man he had seen being held down and as the man whom he had taken into custody.

The defense presented no evidence.

2. *Evidence of witnesses pointing at the scene.* The defendant claims that Officer Dunn's testimony — that when he arrived at the scene people were pointing to the defendant and Roger — should have been excluded as per se testimonial hearsay. We disagree. The testimony was offered only to show what the officer observed, and any statements implied by the pointing were not testimonial, and qualified, in any event, as excited utterances.

First, Officer Dunn's testimony about the pointing was not hearsay. Hearsay is an out-of-court assertion admitted to prove the truth of the matter asserted. See Brodin & Avery, Massachusetts Evidence § 8.1, at 479 (8th ed. 2007). Although nonverbal conduct may sometimes constitute an assertion, *ibid*; see, e.g., *Commonwealth* v. *Pierowski*, 54 Mass. App. Ct. 707, 710-711 & n.7 (2002) (nodding of head was hearsay assertion), the pointing here was not offered to prove the truth of any implied assertion. Contrary to the defendant's argument, neither Officer Dunn nor the prosecutor ever suggested that the persons pointing were accusing the defendant of participating in the robbery. Rather, it appears that they were simply directing Officer Dunn to the ongoing incident involving the defendant and Roger, who was still holding the defendant down. Offered for this purpose, the evidence of the pointing was not hearsay. See *Commonwealth* v. *Cohen*, 412 Mass. 375, 393 (1992) (witness's pointing properly admitted to show state of police knowledge impelling their approach to defendant).

Regardless, the evidence of the pointing would have been admissible even if it had been admitted for hearsay purposes. Although the "[United States Supreme] Court [has] held that the Sixth Amendment [to the United States Constitution] imposes a complete bar to the admission of out-of-court statements that are determined to be testimonial unless (1) the declarant is available at trial or (2) the declarant is formally unavailable to testify and the defendant had a prior opportunity to cross-examine the declarant," *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 6 (2005), cert. denied, 126 S. Ct. 2980 (2006), citing *Crawford* v. *Washington*, 541 U.S. 36, 68 (2004), the Supreme Court "elucidated the distinction between nontestimonial (and therefore admissible) statements and testimonial (and therefore inadmissible) statements left open in *Crawford*." *Commonwealth* v. *Galicia*, 447 Mass. 737, 738-739 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency." *Id.* at 743, quoting from *Davis* v. *Washington*, 126 S. Ct. 2266, 2273-2274 (2006). Similarly, in *Gonsalves*, the Supreme Judicial Court reasoned that "statements offered spontaneously, without prompting, regardless of who heard them," are not testimonial per se. *Commonwealth* v. *Gonsalves*, 445 Mass. at 11.

Here, any statements inherent in the pointing by the bystanders were made immediately upon Officer Dunn's arrival at the scene while the emergency was ongoing and the scene was not secure. There is also no indication in the record that the bystanders pointed to the defendant at the prompting of Officer Dunn. Under these circumstances, the "statements" were not testimonial and, thus, were admissible.

These same factors also qualify the action of pointing by the bystanders as excited utterances.

> "A statement is admissible under the spontaneous utterance exception to the hearsay rule if the proponent shows that the statement was made under the influence of an exciting event, before the declarant had time to contrive or fabricate

the statement, and that the statement tended to qualify, characterize and explain the underlying event."

*Commonwealth* v. *King*, 436 Mass. 252, 254 (2002). Here, the exciting event was still in progress when the officer arrived at the scene. Thus, the officer's testimony was admissible under the excited utterance exception to the hearsay rule.

3. *Jury instructions and burden shifting.* The defendant claims that he is entitled to a new trial because the judge's erroneous instruction, that inferences must be based on facts proved beyond a reasonable doubt, impermissibly shifted the burden of proof. This claim is meritless.

In a case directly on point, the Supreme Judicial Court ruled that an essentially identical instruction, even though erroneous, caused no substantial risk of a miscarriage of justice because it "unduly burdened the Commonwealth." *Commonwealth* v. *Walker*, 443 Mass. 213, 222-223 (2005). See *Commonwealth* v. *Lawrence*, 404 Mass. 378, 394 (1989) (subsidiary facts need only be proved by preponderance of evidence).

4. *Prosecutor's closing argument.* The prosecutor argued in closing that the defendant had cut Zuniga's throat "because he could":

> "[The case is] about this guy right here, him, putting a knife to his throat and cutting it, slicing his throat. And why did he do it? He did it because he could, just because he could.
>
> ". . .
>
> ". . . he sliced his throat because he could.
>
> ". . .
>
> "And what does he do because he could? He cuts his throat.
>
> ". . .
>
> "It is the case about this guy . . . going the extra step. Him going the extra step because he could and viciously slicing Raphael Zuniga's throat."

The defendant argues that these comments misstated the facts and improperly appealed to the jurors' emotions.

"A prosecutor must limit comment in closing statement to the evidence and fair inferences that can be drawn from the evidence." *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 (1994). The arguments should not lead jurors "beyond a fair and calm consideration of the evidence." *Commonwealth* v. *Santiago*, 425 Mass. 491, 494 (1997), quoting from *Commonwealth* v. *Perry*, 254 Mass. 520, 531 (1926). Arguments that are not supported by the evidence are considered speculative and conjectural and thus improper. *Commonwealth* v. *Kozec*, 399 Mass. 514, 522 (1987).

The words "because he could" were not justified as a comment on the evidence, and fair inferences therefrom, relevant to prove the charges of armed robbery by joint venture and assault and battery by means of a dangerous weapon. The comments were improper, and appear to have been intended to lead the jurors beyond a fair and calm consideration of the evidence relevant to the elements of proof for the offenses charged. However, since the defendant did not object to the summation, he is entitled to reversal only if he demonstrates error that created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Fitzgerald*, 376 Mass. 402, 416 (1978), citing *Commonwealth* v. *Baptiste*, 372 Mass. 700, 712 (1977). The defendant has not met his burden here. See *Commonwealth* v. *Gaynor*, 443 Mass. 245, 273 (2005). See also *Commonwealth* v. *Santiago*, 425 Mass. at 500-501; *Commonwealth* v. *Lyons*, 426 Mass. 466, 471, 474 (1998); *Commonwealth* v. *Vuthy Seng*, 436 Mass. 537, 555-556, cert. denied, 537 U.S. 942 (2002).

5. *Ineffective assistance of counsel and jury selection.* The defendant claims that his trial counsel was constitutionally ineffective in failing to challenge a juror either for cause or by use of a peremptory challenge after the judge found the juror to be impartial. We decline to review this claim on this record, on direct appeal. The preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial. *Commonwealth* v. *Zinser*, 446 Mass. 807, 810 (2006), and cased cited.

(a) *Seating of the suspect juror.* As is customary in the jury selection process, the judge thoroughly questioned the entire venire and introduced the attorneys and the defendant. The judge's instructions on the presumption of innocence and the Commonwealth's burden of proof were articulated with commendable simplicity. A juror, whom we shall refer to as juror X, did not respond affirmatively to many of the questions asked by the judge. However, juror X, with others, affirmatively responded that she would believe a civilian over a police witness. Further along, nine jurors, including juror X, responded positively when the judge asked "do any of you or any member of your immediate family belong to any organization such as a neighborhood watch group or community policing group, or anything like that?" And when the judge asked whether one would "tend to hold it against him" if the defendant chose not to testify, juror X was one of twenty-three jurors to respond affirmatively.

The judge then examined the jurors at sidebar, in the presence of the attorneys. When juror X was called and individually questioned, that juror provided some answers that the defendant now characterizes as reflecting the juror's partiality. The exchange between the judge and juror X is set forth in the margin.[5]

(b) *The attorney's action and his client's complaint.* Counsel

---

[5]    The judge:        "Good afternoon. Thank you for waiting all this time. You said that you were, or somebody close to you, is a member of a neighborhood watch or something similar?"

Juror X:          "Well, we — in my neighborhood, we all are part of a neighborhood watch."

The judge:        "All right. Do you think anything about your participation in that activity would in any way affect your ability to listen to the evidence in this case and decide this case, fair to the defendant and fair to the Commonwealth, based only on the evidence?"

Juror X:          "I don't know. I'm sitting there trying to see whether I've already prejudged him, and it's — I'm not sure if I have or not. It's hard for me not to feel like he's guilty. And I — with that — and that's probably not fair."

The judge:        "All right. Well, let me ask you this, because I think you also said that you thought you would — you might hold

did not ask that juror X be removed for cause, and did not use a peremptory challenge, although he had several remaining at the time. The juror was seated and participated in the deliberations. The defendant did not testify, and in closing instructions, the jury were instructed not to draw any adverse inference from this fact, as had been said in the instructions during jury selection. Now, the defendant raises the issue of juror X's impartiality in the context of a claim of ineffective assistance of counsel,[6] arguing that the seating of juror X deprived him of his right to an impartial jury as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, as well as arts. 12 and 29 of the Declaration of Rights of the Massachusetts Constitution, and that "[t]he seating of a biased juror requires reversal." For this proposition he cites *Commonwealth* v. *Vann*

---

|  |  |
|---|---|
|  | it against Mr. [Beaz] if he chose not to testify. Is that —" |
| Juror X: | "Well, I've never done this, but it just seems like why wouldn't he testify." |
| The judge: | "Okay. And what I would say to you, I mean, it's a part of the question. But if you were a juror, I would say to you, and I will, that you can't think that way. That basically what you have to do is if a defendant doesn't testify, you have to put that out of your mind and you have to look at what is the evidence that's presented here. And does that evidence, whatever it is, convince me beyond a reasonable doubt that he is guilty without sort of, you know, factoring in at all that he has chose not to testify. So, do you think you could do that?" |
| Juror X: | "Probably." |
| The judge: | "Okay. So, let me get back to the question of whether you think you've prejudged the case or whether you think you'd be able to really have an open mind, listen to the evidence, and treat it that way; with an open mind is what that means." |
| Juror X: | "Probably." |
| The judge: | "All right. Okay, take a seat." |

[6]We do not overlook that the judge has an independent obligation to examine a person who is called as a juror in an attempt to learn, and protect against, whether the juror has any interest in the case, or is sensible of any bias or prejudice. See Mass.R.Crim.P. 20(b)(1), 378 Mass. 889 (1979); G. L. c. 234, § 28.

*Long*, 419 Mass. 798, 801 (1995), a case in which the defendant did challenge for cause and had exhausted peremptory challenges.

(c) *Discussion.* We agree with the Commonwealth that the current record is incomplete, and therefore insufficient for a competent review by this court of the claim of ineffective assistance of counsel. The answers of juror X to the judge's questions, in the light of *Commonwealth* v. *Clark*, 446 Mass. 620, 628-630 (2006) (ambiguous response requires further inquiry by trial judge), may not be sufficient to resolve concerns about potential prejudice to the defendant by the seating of this juror. In *Clark*, however, the defendant's appellate rights as to the issue of juror bias were preserved; he unsuccessfully challenged the juror for cause, exercised his last peremptory challenge on the juror, and was forced to accept another juror whom he would have challenged peremptorily. *Id.* at 629. Here the defendant neither challenged the juror for cause, nor used one of several peremptory challenges available to him. In these circumstances, the potential input from the attorney on a motion for new trial on any tactical reasons for his failure to challenge the juror seems to us to be potentially and particularly helpful. See, e.g., *Commonwealth* v. *Hudson*, 446 Mass. 709, 715-722 (2006); *Commonwealth* v. *Diaz*, 448 Mass. 286, 288 (2007) (counsel's tactical decisions are entitled to substantial deference unless they are "manifestly unreasonable when made"). Cf. *Strickland* v. *Washington*, 466 U.S. 668, 688-690 (1984) (defense counsel's obligations to the client include "a duty of loyalty" and "the overarching duty to advocate the defendant's cause. . . . There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment").

As pertaining to the defendant's right to a fair and impartial jury, the responsibilities of the trial judge and the defendant's attorney intersect. The trial judge has broad discretion in determining the partiality of a prospective juror. *Commonwealth* v. *Ferguson*, 425 Mass. 349, 353 (1997). The trial judge is also

in a much better position than an appellate court to evaluate a prospective juror's ability to be impartial. *Commonwealth* v. *Seabrooks*, 433 Mass. 439, 443 (2001). "The determination of a juror's impartiality 'is essentially one of credibility, and therefore largely one of demeanor.' " *Commonwealth* v. *Ferguson*, *supra* at 352-353, quoting from *Patton* v. *Yount*, 467 U.S. 1025, 1038 (1984). We are also aware that not all expressions of potential bias by a juror, especially initial expressions, require the exclusion of the juror from service. Compare *Commonwealth* v. *Clark*, 446 Mass. at 628-629 (juror's ambiguous response after statement of bias required reversal), with *Commonwealth* v. *Jaime J.*, 56 Mass. App. Ct. 268, 274 (2002) (juror's use of equivocal language, such as "probably" is not determinative of partiality). Given the deference ordinarily accorded to the trial judge's determination of juror impartiality, see *Commonwealth* v. *Ferguson*, *supra* at 353, it is of particular importance that she be afforded the opportunity to address the defendant's complaint raised for the first time on appeal.

6. *Conclusion.* We conclude that this case is one in which it is inappropriate for us to act on the ineffective assistance claim on the state of the record before us.[7] The convictions are affirmed. The defendant may press his claim of ineffective assistance of counsel in a motion for new trial, appropriately supported.

*Judgments affirmed.*

---

[7]We do not reach the question whether the seating of a juror may constitute reversible error notwithstanding the defendant's failure to exercise an available peremptory challenge.