The defendant appeals from his conviction, after a jury trial, for aggravated rape and abuse of a child, G. L. c. 265, § 23A (b ).[2] His primary arguments on appeal concern various aspects of the admission of DNA evidence; he also argues that the judge failed to adequately examine prospective jurors to ensure that they understood the Commonwealth's burden of proof and the defendant's presumption of innocence. We affirm.
We briefly summarize the evidence, reserving additional facts to our discussion infra of the defendant's arguments.[3] The conviction arises from the victim's allegation that the defendant, who is her uncle, raped her within days of his release from prison in September, 2013. The rape occurred in the enclosed porch of the family home; the victim was fourteen years old at the time. She reported the incident shortly thereafter, and a SANE[4] examination was conducted at a local hospital. The victim refused to allow the SANE nurse to take a vaginal swab and was unwilling to disrobe in front of the nurse. Accordingly, the nurse instructed the victim on how to take the swab. Although the nurse could not verify that the victim followed the instructions (because she did not observe the victim take the swab, nor did she observe her disrobe), the victim testified that she followed the nurse's instructions. The victim then handed the swab to the SANE nurse.
The vaginal swab, together with the remainder of the SANE evidence collection kit, was transmitted to the State laboratory where a criminologist extracted the vaginal swab and found sperm cells. A DNA profile was then generated by an analyst who did not testify at trial.
A police officer took a buccal swab from the defendant on February 4, 2015. The officer did not say what he did with that sample, or where he sent it. However, in response to a generalized question that he describe "how" a buccal sample is taken, the officer testified:
"We basically swab the inside of the cheeks on the inside of the mouth, the right-side cheek, the left-side cheek and also underneath the tongue, put it on a sample card, seal[ ] [it] and sen[d] [it] to the lab."
A forensic scientist in the State lab, Kira Snyder, compared the victim's vaginal swab DNA profile to a buccal swab taken from the defendant.[5] Like the vaginal swab, the buccal swab was profiled by an analyst who did not testify at trial.[6] Snyder determined that the DNA profile from the vaginal swab matched the DNA profile from the buccal swab.[7]
1. Confrontation -- nontestifying DNA analysts. The defendant argues that Snyder's testimony violated his confrontation right under the Sixth Amendment to the United States Constitution and under art. 12 of the Massachusetts Declaration of Rights because the analysts who prepared the DNA profiles upon which Snyder's opinion was based did not testify.[8]
"We allow an expert to testify to his or her independent opinion even if based on data not in evidence; we do not allow expert witnesses to testify to the specifics of hearsay information underlying the opinion on direct examination." Commonwealth v. Greineder, 464 Mass. 580, 592 (2012) (Greineder II ). Here, on direct examination, Snyder testified only to the fact that she compared the DNA profile from the vaginal swab with the DNA profile from the buccal swab and determined that the defendant could not be excluded as a possible contributor, given also the statistical likelihood that the DNA profile from the vaginal swab would be found in the general population. She did not testify about the work of the analysts who prepared the profiles, nor did she testify to any of the specifics (hearsay or otherwise) of the information underlying her opinion. Neither the Sixth Amendment nor art. 12 precludes "an expert's independent opinion testimony, even if based on facts or data not in evidence and prepared by a nontestifying analyst." Id. at 593. See Commonwealth v. Jones, 472 Mass. 707, 712 (2015), quoting Commonwealth v. Nardi, 452 Mass. 379, 388 (2008) (in this context, "the protection provided by art. 12 is coextensive with the guarantees of the Sixth Amendment"). No confrontation issue was raised by Snyder's testimony on direct.
Under our bifurcated common-law confrontation evidentiary rubric, "the defendant can open the door on cross-examination to testimony regarding the basis for the expert's opinion," Commonwealth v. Barbosa, 457 Mass. 773, 785 (2010), and if the defendant has a fair opportunity to cross-examine the expert witness regarding both the expert's opinion and the underlying data and procedures, the defendant's common-law confrontation rights are not violated. See Greineder II, 464 Mass. at 594-595 ; Barbosa, supra at 786. If, however, the defendant does not have such an opportunity, then his common-law confrontation right is violated. Compare Greineder II, supra at 596-597 (no confrontation right violation where expert was employed by DNA testing laboratory and as such "in a unique position to speak to the DNA testing process"), with Commonwealth v. Tassone, 468 Mass. 391, 401-402 (2014) (confrontation right violated where expert did not work for laboratory and could not testify to procedures, protocols, and reliability of data on which expert's opinion was based).
The defendant had -- and exercised -- that opportunity here. Voir dire established that Snyder worked in the same lab as the nontestifying analysts, was familiar with the processes they used, the procedures and protocols of the lab, and with each step that the analysts employed to document the administrative and technical accuracy of their work. The defendant was free to cross-examine Snyder on all of these topics. He also had the opportunity to cross-examine Snyder about the fact that she accepted, without independent review, knowledge, or verification, the profiles generated by the nontestifying analysts. The fact that counsel chose not to explore these avenues on cross-examination (although she did so in voir dire) does not mean that she was deprived of the opportunity to do so. See Barbosa, 457 Mass. at 790-791. Instead, it appears from the transcript that counsel's strategy was to focus on other lines of attack: first, that Snyder had no independent knowledge that the DNA on the vaginal swab actually came from a vagina, let alone from the victim (which tied into the defense that the defendant had had sex with other women on the porch during the same timeframe); and second, that Snyder had no independent knowledge that the buccal swab came from the defendant. She also established that Snyder's statistical testimony pertained to unrelated persons, while the victim and the defendant were closely related.
2. Evidence submission form. The defendant makes three arguments with respect to the admission of the evidence submission form, which was the only direct evidence that the buccal swab profile analyzed by Snyder came from the defendant. First, he contends that the judge abused his discretion by admitting the form given the Commonwealth's failure to adequately authenticate it. Second, he contends (and the Commonwealth agrees) that the form contains inadmissible hearsay to the extent that it was offered to prove that the defendant was the source of the DNA.[9] Third, he contends (and the Commonwealth does not dispute) that the contents of the form are testimonial. We examine each of these contentions in turn.
Because the defendant preserved his objection that the evidence submission form was inadequately authenticated, we review to determine whether the judge abused his discretion to admit it, see Zucco v. Kane, 439 Mass. 503, 507 (2003), and if so, whether the document's admission resulted in prejudicial error. There was no error. "The requirement of authentication as a condition precedent to admissibility of real evidence is satisfied by a foundation sufficient to support a finding that the item in question is what its proponent claims it to be." Commonwealth v. Siny Van Tran, 460 Mass. 535, 546 (2011). See Mass. G. Evid. § 901(a) (2018). "A proponent adequately lays the foundation for admission when a preponderance of the evidence demonstrates that the item is authentic." Siny Van Tran, supra. "If the object is one the witness can particularly identify, it will be sufficient." Commonwealth v. Herring, 66 Mass. App. Ct. 360, 365 (2006). Here, although the safer practice would certainly have been to have the person who created the form establish its authenticity, authenticity was sufficiently established by Snyder's testimony that such evidence submission forms regularly accompany buccal swabs when they are submitted to the lab for testing, that the evidence form in this case pertained to the defendant, and that it bore the defendant's name and date of birth as well as various case-identifying numbers.
The defendant preserved his hearsay objection,[10] and we thus examine whether its admission resulted in prejudicial error. "An error is nonprejudicial only '[i]f ... the conviction is sure that the error did not influence the jury, or had but very slight effect .... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.' " Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), quoting Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983).
Although we acknowledge that the evidence submission form supplied the only direct evidence that the buccal swab tested at the lab was the same swab taken from the defendant, we conclude that its admission did not rise to the level of prejudicial error. To begin with, weaknesses in the chain of custody do not normally require reversal because they go only to the weight, not the admissibility, of evidence.[11] See Commonwealth v. Caruso, 476 Mass. 275, 286 n.7 & 287 n.8 (2017). Moreover, although the evidence submission form was the only direct evidence establishing the chain of custody of the buccal swab, there was circumstantial evidence that supported the same conclusion. The officer who took the buccal swab testified that he took a buccal swab from the defendant, identified the defendant in court, and identified his date of birth. He also testified that, as a general practice, buccal swabs are sent to the lab for testing. It is true that the officer did not state that he sent this particular swab to the lab, but it was open to the jury to infer that he did so given his description of the general practice. A further link was supplied when Snyder testified that the evidence submission form bore the same birth date as that identified by the officer. More broadly still, the victim testified that the defendant raped her, testimony that was buttressed by the fact that the vaginal swab taken from her contained sperm. Circumstances buttressed the victim's testimony, including the physical layout of the house, and the chronology of events (the timing of the defendant's release from jail, the timing of the victim's report to her family, and the timing of the SANE examination -- all of which happened in close proximity). Finally, the vaginal swab profile matched that of the buccal swab. In these circumstances, we conclude that admission of the hearsay evidence to supply the missing link in the chain of custody of the buccal swab does not require reversal.
For the same reasons, it did not result in a miscarriage of justice even though its admission violated the defendant's confrontation rights.[12] And, again for the same reasons, we reject the defendant's unpreserved argument that weaknesses in the chain of custody made testimony relating to the DNA testing and its results substantially more prejudicial than probative such that it should not have been admitted.
3. Jury empanelment. The defendant argues that the judge abused his discretion by seating four jurors who revealed during voir dire that they did not understand the presumption of innocence or the Commonwealth's burden of proof. The issue is unpreserved either because the defendant failed to challenge the particular jurors for cause, or failed to exercise one of his peremptory challenges, or both. See Commonwealth v. Clark, 446 Mass. 620, 629 (2006).
"Article 12 of the Massachusetts Declaration of Rights and the Sixth Amendment to the United States Constitution, applied to the States through the due process clause of the Fourteenth Amendment, guarantee to the criminally accused the right to a trial by an impartial jury." Commonwealth v. Susi, 394 Mass. 784, 786 (1985). "The failure to grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process." Id. "A trial judge is accorded considerable discretion in the jury selection process and his finding that a juror stands indifferent will not be disturbed except where juror prejudice is manifest." Clark, supra at 629-630. This is because the trial judge "who saw the juror was in the best position to determine whether the juror understood the question[s] or whether further questions were required." Commonwealth v. Lattimore, 396 Mass. 446, 450 n.6 (1985).
We discern no abuse of discretion here. After careful follow-up questioning of each of the four jurors in question, the judge repeated his instructions regarding the proper allocation of the burden of proof. Each juror then affirmed his or her understanding of that instruction and willingness to both follow and apply it. It is clear from the record that the judge's decision was based on his first-hand assessment of the jurors' response, including his assessment of the jurors' sincerity and credibility -- matters not open to our review.
For these reasons, we affirm the judgment.
So ordered.
Affirmed.

The defendant's motion for a directed verdict was allowed at the close of the Commonwealth's case with respect to a charge of indecent assault and battery on a person over fourteen, G. L. c. 265, § 13H.

Additional information (in the form of representations of counsel and information elicited during the voir dire of Ms. Snyder, a State forensic scientist) concerning the DNA evidence was before the judge when he made various evidentiary rulings at issue on appeal.

Sexual assault nurse examiner.

The buccal swab was submitted to the lab with an evidence submission form that identified the defendant as the source of the buccal swab.

Relying on Snyder's brief reference that she did DNA analysis of the vaginal swab, the Commonwealth argues that she is the person who created the DNA profile from the swab. However, that position is at odds with Snyder's testimony during voir dire and with the prosecutor's unambiguous statement at trial that a different analyst, Maureen McCabe, prepared the sample.

Snyder testified that "[t]he expected frequency of occurrence of this DNA profile is approximately one in 1.488 sextillion unrelated African-American individuals, one in 1.571 sextillion unrelated Asian individuals, and in 67.43 sextillion unrelated Caucasian individuals, and one in 24.99 sextillion unrelated Hispanic individuals."

The defendant does not (and did not below) challenge the reliability of the DNA profiling, the methodology used, or of Snyder's reliance on it. In other words, the defendant's argument is (and was) not based on Commonwealth v. Lanigan, 419 Mass. 15 (1994).

The Commonwealth appears to suggest that the evidence submission form may qualify as a business record. However, the foundation for that position was not established below and, furthermore, we note that the document was created after this criminal proceeding. See Mass. G. Evid. § 803(6)(A) (2018).

The Commonwealth contends that the hearsay objection was not preserved. However, the defendant specifically identified hearsay as the basis for his objection the first time it was raised. The defendant was not required to repeat the basis each time he subsequently renewed his objection or when the judge preserved it when the document was admitted.

For this reason, the defendant's argument that weaknesses in the chain of custody made Snyder's DNA testimony more prejudicial than probative such that it should have been excluded fails.

After the indictments in this case, the Commonwealth moved to compel the defendant to produce a DNA sample by way of buccal swab. That motion was supported by an affidavit from a State lab employee who averred that a buccal swab was necessary so that "[a]n expert opinion could then be rendered as to whether or not the defendant was or was not a probable source of the biological substances recovered from the evidence." The evidence submission form is accordingly testimonial because it was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Commonwealth v. Parenteau, 460 Mass. 1, 8 (2011), quoting Crawford v. Washington, 541 U.S. 36, 52 (2004).