COMMONWEALTH *vs.* PABLO MORA.

No. 11-P-607.

Essex. April 4, 2012. - October 4, 2012.

Present: MILLS, BROWN, & SIKORA, JJ.

*Controlled Substances. Firearms. Constitutional Law,* Search and seizure. *Search and Seizure,* Warrant, Affidavit. *Evidence,* Cross-examination. *Practice, Criminal,* Motion to suppress, Jury and jurors, Voir dire, Instructions to jury, Presence of defendant.

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress evidence seized from two properties that the defendant owned, where, with respect to both properties, the affidavits supporting the application for the warrants demonstrated the informant's reliability and credibility, in that the informant provided his name to the police, was named in the affidavits, and had ongoing interaction with the police; and in that the informant provided firsthand knowledge, provided a level of detail and specificity concerning his observations, and supplied information that, to some extent, was corroborated by police [577]; and where, with respect to one property (a residence), the affidavit demonstrated a sufficient nexus between the residence and the illegal activity, in that the anticipatory search warrant was conditioned on a controlled purchase of controlled substances taking place within the residence [577-578].

Even assuming that the judge at a criminal trial erred in questioning and dismissing six prospective jurors who she determined could not impartially evaluate the testimony of a Commonwealth informant, no prejudice arose, where the defendant failed to show that any member of the empanelled jury was biased against him or that he was otherwise deprived of a fair, impartial jury. [578-579]

At a criminal trial, the judge did not abuse her discretion in limiting cross-examination of two Commonwealth witnesses, where the defendant was able to elicit testimony that permitted him, in closing argument, to challenge the motive and credibility of a Commonwealth informant. [579-580]

At a criminal trial, no error arose from the instruction given to the jury regarding the absence of a codefendant. [580-581]

At the trial of an indictment in which the Commonwealth combined the amounts of cocaine recovered at two properties to charge the defendant with trafficking in cocaine, no substantial risk of a miscarriage of justice arose from the judge's standard instruction on trafficking in a controlled substance. [581-585]

INDICTMENTS found and returned in the Superior Court Department on November 21, 2007.

A pretrial motion to suppress evidence was heard by *John T. Lu*, J., and the cases were tried before *Leila R. Kern*, J.

*Brandon L. Campbell* for the defendant.

*Catherine L. Semel*, Assistant District Attorney, for the Commonwealth.

MILLS, J. The jury convicted the defendant of trafficking in cocaine, two hundred grams or more, G. L. c. 94C, § 32E(b)(4), and illegal possession of a firearm, G. L. c. 269, § 10(h). On appeal, he makes several claims of error, including (1) the denial of his motion to suppress evidence, (2) the dismissal of potential jurors for cause during voir dire, (3) the limitation of defense cross-examination of an informant and a police officer, (4) the erroneous instruction on the midtrial absence of the codefendant, and (5) the erroneous instructions on the aggregation of cocaine found in two locations for purposes of the weight element of trafficking.[1] We affirm.

*Background.* This case arises after searches conducted pursuant to search warrants by the police of two properties in Lawrence owned by the defendant: 63 Bromfield Street (Bromfield Street) (a house that the defendant was renovating), and 109 Union Street (Union Street) (where the defendant resided). The police relied on an informant, Stephen Cook, to obtain the search warrants. Cook became an informant after being arrested for trafficking in cocaine, which he alleged he had received from the defendant.[2] On November 7, 2007, Cook participated in a controlled "buy" at Bromfield Street, after which Cook turned over 189.19 grams of cocaine to the police.[3] Shortly thereafter

---

[1]Based on our resolution of the issues, we need not address the defendant's claim that a combination of trial errors deprived him of a fair proceeding.

We likewise decline to review the defendant's multiple claims of ineffective assistance of counsel in the absence of a motion for new trial to elucidate the reason for defense counsel's actions (or inactions) at trial. See *Commonwealth v. Melo*, 67 Mass. App. Ct. 71, 78-79 (2006) (ineffective assistance not shown where the defendant failed to bring a motion for new trial or show counsel's reasoning during jury selection). See also *Commonwealth v. Zinser*, 446 Mass. 807, 810 (2006), and cases cited ("preferred method for raising a claim of ineffective assistance of counsel is through a motion for a new trial").

[2]Cook testified that he had received the cocaine from the defendant in lieu of payment for electrical work he performed at Bromfield Street.

[3]Cook testified that he received the 189.19 grams of cocaine from the defendant during the controlled buy.

the police searched Bromfield Street and found the defendant and his cousins Jean Guillaume and Luis Alcantara. A digital scale was on a table. The police subsequently searched Union Street, where they recovered two plastic bags containing 15.22 grams of cocaine, a digital scale, a firearm, and ammunition. We reserve additional facts for the discussion of individual issues.

1. *Motion to suppress.* We review the denial of a motion to suppress under familiar principles. See *Commonwealth* v. *Stephens*, 451 Mass. 370, 381 (2008). With respect to both properties, the defendant contends that the warrant affidavits failed to show Cook's reliability and credibility. We disagree. Cook provided his identity to the police, was named in the affidavits, and had ongoing interaction with the police. See *Commonwealth* v. *Beliard*, 443 Mass. 79, 85 (2004) ("Reliability is shown when an informant provides his identity to police and is willing to be named in the affidavit in support of the warrant"). Contrast *Commonwealth* v. *Grinkley*, 44 Mass. App. Ct. 62, 69 (1997) (identified informant never met with the police "and presumably could not be contacted by the police"). Additionally, Cook "provided 'firsthand knowledge'; furnished a level of detail and specificity concerning his observations; . . . and supplied information that, to some extent, was corroborated by police or others."[4] *Beliard*, 443 Mass. at 85.

The defendant also argues that the Bromfield Street affidavit failed to show a nexus between the residence and illegal activity. See *Commonwealth* v. *Pina*, 453 Mass. 438, 440-441 (2009). However, the anticipatory search warrant for Bromfield Street was conditioned on a controlled buy taking place inside the residence. "It is well settled that a controlled buy supervised by police provides probable cause to issue a search warrant." *Commonwealth* v. *Villella*, 39 Mass. App. Ct. 426, 427-428 (1995) (upholding an anticipatory search warrant based on a controlled buy within a residence). See *Commonwealth* v. *Cruz*, 430 Mass. 838, 842 n.2 (2000), citing *Commonwealth* v. *Warren*, 418 Mass. 86, 89 (1994). Compare *Pina*, 453 Mass. at 441-442 (no nexus where police on one occasion observed the defendant leave the

---

[4]Cook's claim that he was supplied drugs by the defendant was corroborated by another confidential informant and by officers.

residence at issue and proceed to the controlled buy). The motion to suppress was properly denied.

2. *Jury selection.* During voir dire, the judge excused six prospective jurors who she determined could not impartially evaluate the testimony of a government informant. Those six jurors had either indicated that they would weigh or consider a witness's testimony differently knowing that the witness was an informant, or made more explicit statements of suspicion of informants.[5] The defendant argues that the dismissals "immunized the jury" from members who would have questioned "Cook's bias and motive to fabricate his testimony."

"The trial judge has broad discretion in determining the partiality of a prospective juror." *Commonwealth* v. *Beaz*, 69 Mass. App. Ct. 500, 508 (2007). The trial judge is in a better position than an appellate court to evaluate impartiality, which requires a determination of credibility and demeanor. *Id.* at 509. "The scope of a voir dire is in the sound discretion of the trial judge and will be upheld absent a clear showing of abuse of discretion." *Commonwealth* v. *Perez*, 460 Mass. 683, 689 (2011), quoting from *Commonwealth* v. *Garuti*, 454 Mass. 48, 52 (2009).

Even were we to find that the judge erred in questioning and dismissing the jurors, the defendant is not entitled to the redress he seeks. "Under G. L. c. 234A, § 74, a defect in jury empanelment does not warrant reversal unless a defendant objects to it 'as soon as possible after its discovery or after it should have been discovered and unless [he] has been specially injured or prejudiced thereby.' " *Commonwealth* v. *Vuthy Seng*, 456 Mass. 490, 495 (2010). "Additionally, constitutional due process and fair trial concerns require us to confirm that the procedures did not impair the defendant's right to an impartial jury." *Ibid.*

---

[5]The judge asked all the prospective jurors variations of the same question: whether they would weigh or consider a witness's testimony differently knowing that the witness was an informant who may have received a benefit for his cooperation. Jurors nos. 17, 24, 30, and 31 gave affirmative responses. A fifth juror, no. 41, said more explicitly, "I wouldn't hold that testimony [of an informant] in as much sway as someone who had nothing to gain from giving the testimony." A sixth juror, no. 50, referred to reading a news article about "a fellow who was executed in 2007 based partially on snitch testimony" who was "probably . . . innocent," and other "stories about jailhouse-snitches and informants," and said that he would be "suspicious when there's consideration."

Here, the defendant failed to object to the jury empanelment in the proceeding below, and he has not shown that he was prejudiced by the dismissal of the jurors.

"The goal of permitting questioning of prospective jurors is to provide a defendant with a competent, fair, and unbiased jury." *Commonwealth* v. *Lao*, 443 Mass. 770, 776-777 (2005), quoting from *Commonwealth* v. *Lopes*, 440 Mass. 731, 736 (2004). As the Commonwealth argues, there is no right to the "particular impartial jurors [who] the [defendant] speculates may be most favorably disposed to his defense." The defendant has not shown that any member of the empaneled jury was biased against the defendant or that he was otherwise deprived of a fair, impartial jury. See *Commonwealth* v. *Hampton*, 457 Mass. 152, 168-169 (2010).

3. *Cross-examination of Cook and police officer.* At trial the defendant sought to show that Cook's girlfriend, Stella Cleghorn, was involved in his cocaine trafficking charges to demonstrate Cook's bias and motive to fabricate testimony to protect her. Cook was charged based on cocaine recovered during a search of the residence of Cleghorn's sister, where Cook and Cleghorn were staying. Lieutenant Hughes participated in the search. The defendant contends that the judge improperly limited defense questioning of Cook and Hughes regarding Cleghorn. During cross-examination of Cook, defense counsel asked whether Cook discussed the cocaine with Cleghorn, whether she agreed to allow it on the premises, and whether her sister gave permission to store the cocaine there. On cross-examination of Hughes, defense counsel asked whether Cleghorn was a target of the search warrant for the premises. The judge sustained the Commonwealth's objections on each question.

While a judge may not "bar *all* inquiry" (emphasis added) into the possibility of bias, *Commonwealth* v. *Avalos*, 454 Mass. 1, 7 (2009), quoting from *Commonwealth* v. *Allison*, 434 Mass. 670, 681 (2001), a judge nevertheless has discretion to determine whether the evidence demonstrates bias and "to limit cross-examination concerning possible bias when further questioning would be redundant." *Ibid.*, and cases cited. Here, the defense was permitted to elicit testimony from Cook that Cleghorn weighed and separated the cocaine into smaller bags for sale,

that she was charged as an accessory, and that this charge was dismissed. The defense also elicited from Hughes that, during the search, Cleghorn told him where the cocaine was stored.[6] The judge did not abuse her discretion. This information enabled the defendant to challenge Cook's motive and credibility in the closing argument.

4. *Jury instruction on the absence of the codefendant.* The defendant was tried along with his codefendant and cousin, Jean Guillaume. Prior to the start of a regular trial day, Guillaume was taken to the hospital and the judge suspended trial for the day. The judge learned the following morning that Guillaume had died. The parties disagreed about whether the judge should tell the jury that Guillaume had passed away or give a "neutral" instruction that he simply was no longer there. Over the defendant's objection, and at the request of the Commonwealth, the judge gave the following instruction: "I'm sure you'll notice, without my drawing attention to it, that . . . the other defendant, Jean Guillaume, [and his attorney] are not here. You are not to speculate as to why they're not here. And it is of no relevance with respect to the case against the [d]efendant."

Defense counsel argued that the instruction would likely cause jurors to conclude that Guillaume had fled or entered a plea, unfairly prejudicing the defendant. See *Commonwealth* v. *Muckle*, 59 Mass. App. Ct. 631, 636 (2003), quoting from *Commonwealth* v. *Kane*, 19 Mass. App. Ct. 129, 136 (1984) ("a 'jury may raise very damaging inferences from the bare fact that the defendant has somehow flown' "). The prosecutor contended that the instruction was fair to both parties and was necessary to avoid prejudicing the Commonwealth. He feared that the defendant's close relationship with Guillaume might engender sympathy for the defendant, who was scheduled to take the witness stand next.[7] Such neutral jury instructions have been upheld in situations where the defendant faced a similar risk of prejudice. See *Commonwealth* v. *Pasciuti*, 12 Mass.

---

[6] On direct examination, Hughes also testified that Cleghorn was not arrested at the time of the search because she was pregnant and she and Cook were the only adults present to care for several children.

[7] When he took the witness stand, the defendant referred to Guillaume as his "nearest cousin."

App. Ct. 833, 839-840 (1981) (where the codefendant pleaded guilty, a neutral instruction that the "indictment against [the codefendant] is being withdrawn from further consideration by the jury" was appropriate); *Commonwealth* v. *Kalhauser*, 52 Mass. App. Ct. 339, 347 (2001) (judge instructed the jury that the indictment on one of the charges against the defendant had been withdrawn); *Muckle*, 59 Mass. App. Ct. at 635 (where the codefendant failed to appear for trial, the judge gave a neutral instruction that the codefendant was "not present"). We discern no error here.

5. *Jury instructions on the trafficking charge.* The Commonwealth combined the two amounts of cocaine recovered in this case, 189.19 grams from the Bromfield Street controlled buy and 15.22 grams from the defendant's Union Street residence, in one trafficking charge. At the close of trial, the judge instructed the jury on the trafficking in cocaine charge in three quantities: fourteen grams and over, 100 grams and over, and 200 grams and over. The judge also charged the jury on the lesser included offense of simple possession. The jury convicted the defendant of trafficking in 200 grams or more of cocaine, necessarily aggregating the two amounts.

On appeal, the defendant contends that in order to convict the defendant of trafficking in over 200 grams, the jury were required to find that the defendant intended to distribute cocaine from each amount. More importantly, he argues, if they credited the defendant's testimony that the smaller amount was for personal use, they could only convict him of trafficking in 100 grams or more. He claims error in the judge's failure to so instruct the jury.[8] Defense counsel did not make this argument in his closing, request an instruction to this effect, or object to the jury charge. We therefore review under the familiar standard for a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967); *Commonwealth* v. *Randolph*, 438 Mass. 290, 297-298 (2002).

---

[8]The defendant argues that a jury question during deliberations shows that the instructions were insufficient and left the jury confused about the intent requirement. The jury asked, "Do we combine both drug quantities [i.e., 189.19 grams and 15.22 grams] as one charge?" They withdrew the question before the judge could respond.

The judge gave an extensive instruction on the elements of trafficking in a controlled substance, including that the jury must find that the defendant "had the specific intent to distribute the controlled substance." The instruction, in pertinent part, is set out in the margin.[9] The judge added, appropriately, that

[9]"In order to prove the defendant guilty of trafficking, the Commonwealth must prove five elements beyond a reasonable doubt:

"First, that the defendant possessed a certain substance;

"Second, that the substance was a controlled substance; namely, cocaine;

"Third, that the defendant possessed that controlled substance knowingly or intentionally;

"Fourth, that the defendant had the specific intent to distribute the controlled substance, and;

"Finally, that the amount of cocaine was the statutory amount, which is 14 grams in order for it to be trafficking — and I'll get to that in a moment — or more.

" . . .

"The fourth element the Commonwealth must prove beyond a reasonable doubt is that the defendant had the specific intent to distribute the substance he possessed; in other words, that the defendant actually intended to distribute that controlled substance.

"Intent refers to a person's object or objective or purpose. Specific intent, which is required in this case, is the act of concentrating or focusing the mind for some perceptible period. It's a conscious act with the determination of the mind to do an act. It is contemplation, rather than reflex; and it must precede that act.

" . . .

"[T]he Commonwealth must prove the defendant had the specific intent to distribute the controlled substance. The word 'distribute' includes all forms of physical transfer. It is unlawful for a person to even make a gift of a controlled substance.

"To distribute means what the word commonly or usually means. It means to hand over to another, to give away or to transfer ownership from one person to another. It is irrelevant whether money, property or some other type of compensation was involved.

"The Commonwealth does not have to prove an actual sale. But it must prove that this defendant specifically had it in his mind that he was going to distribute — that is, transfer ownership of some portion of this controlled substance to another person.

"The Commonwealth need not prove the defendant specifically intended to distribute all of it. However, bear in mind, as to this element, that the Commonwealth must prove that the defendant did not possess the controlled substances solely for his own use or consumption; but instead, intended to distribute it to others."

"[t]he Commonwealth need not prove the defendant specifically intended to distribute all of it."

The Commonwealth may combine "two quantities of a specified controlled substance possessed by a defendant at different locations in order to prosecute him on a more serious offense under G. L. c. 94C, § 32E." *Commonwealth* v. *Ortiz,* 431 Mass. 134, 138 (2000). The Commonwealth need not prove intent to distribute the entire amount of the controlled substance. See *Commonwealth* v. *Tata,* 28 Mass. App. Ct. 23, 25 (1989); *Commonwealth* v. *Gonzalez,* 67 Mass. App. Ct. 877, 882 (2006). The defendant now argues, however, that when the substance is found in multiple locations, the Commonwealth must prove intent to distribute some amount from each location in order to convict the defendant in trafficking the combined amount.

We are not persuaded that it was error for the judge to give the standard instruction on trafficking in a controlled substance, particularly where, as here, it would require the judge, sua sponte, to raise the issue of the effect of divergent intent on aggregation of amounts.[10] Even were we to find error, it did not create a substantial risk of a miscarriage of justice. "A substantial risk of a miscarriage of justice exists when we have 'a serious doubt whether the result of the trial might have been different had the error not been made.' " *Randolph,* 438 Mass. at 297, quoting from *Commonwealth* v. *Azar,* 435 Mass. 675, 687 (2002). "Errors of this magnitude are extraordinary events and relief is seldom granted." *Ibid.* In our analysis, "[w]e review the evidence and the case as a whole." *Id.* at 297-298, quoting from *Azar,* 435 Mass. at 687.

The Commonwealth's case hinged on Cook's testimony. Cook testified that he first received cocaine from the defendant in lieu of $2,000 for work he performed at Bromfield Street. He next received cocaine from the defendant during the controlled buy. During the buy, Cook entered Bromfield Street before the defendant. The defendant subsequently entered and, after making telephone calls, told Cook that "the guy was on his way." After

---

[10]At trial, the defendant testified that he possessed the smaller amount for personal use and never possessed the larger amount. In closing, the defense requested that the jury find the defendant guilty only of simple possession, but did not challenge the aggregation of amounts based on divergent intent.

hearing a car horn in the driveway, the defendant and Guillaume went outside. They returned with Alcantara. The defendant was holding a scale, and Guillaume handed the defendant a paper bag containing cocaine. The defendant weighed the cocaine and then told Cook that "he ha[d] more at his house, but it's not as good a quality. . . . But if the guy wanted it, . . . he would get it from his house and give it to [Cook]." As noted above, the police found a digital scale at Union Street. Cook left Bromfield Street and turned over what was later shown to be 189.19 grams of cocaine to the police.

The defendant offered a different version of events from Cook. He testified that he was a recreational user of cocaine and possessed the smaller amount of cocaine and the digital scale recovered from Union Street for personal use. He never offered cocaine to Cook to settle a debt, and in fact Cook had offered to sell him cocaine. Although he was present at Bromfield Street at the time of the alleged controlled buy, he did not know of or observe any cocaine distribution. The defendant sent Guillaume out alone to bring Alcantara inside, and Cook left abruptly after they returned. The defendant was not aware of the scale until the police pointed it out to him during the search.

The jury convicted the defendant of trafficking in over 200 grams of cocaine. They were instructed that to convict based on this weight, they had to find that the defendant possessed over 200 grams (i.e., both amounts of cocaine),[11] and intended to distribute at least some part of it. It is clear from the verdict

---

[11]With respect to the issue of weight, the judge instructed, in relevant part:

"[I]n order to find [the defendant] guilty of trafficking in cocaine over 200 grams, you would have to find all five of those elements as to 200 grams or more of cocaine.

"If you drop down to No. 3, guilty of the lesser included offense, trafficking in cocaine over 100 grams — that would be anything between 100 and 200 — it could go up to 199.9, if you found that. If all five elements were proven to your satisfaction — again, unanimously — you would put your check mark there.

"As to No. 4, all 12 of you would have to agree that you find [the defendant] guilty of the lesser included offense of trafficking in cocaine over 14 grams. That's the statutory amount. So, that would be anything 14 grams or more."

that the jury credited Cook's testimony over that of the defendant, who disclaimed possession of the larger amount and any intent to distribute.

The defendant appears to argue that it is not clear from the verdict whether the jury believed Cook's testimony that the defendant offered to get him additional cocaine from Union Street (and thus that the defendant intended to distribute the smaller amount). Given that the jury otherwise credited Cook's testimony, we are not persuaded that there is a serious doubt whether the jury also credited Cook on the single issue of the defendant's offer to provide additional cocaine from Union Street. We conclude that any error in failing to instruct the jury on intent with respect to the individual amounts did not create a substantial risk of a miscarriage of justice.[12]

*Judgments affirmed.*

---

[12]As discussed in note 1, *supra*, we decline to consider the defendant's claim of ineffective assistance of counsel on the record before us. See *Melo*, 67 Mass. App. Ct. at 78-79. We note additionally that "ineffectiveness is presumed if the attorney's omission created a substantial risk, and disregarded if it did not." *Randolph*, 438 Mass. at 296.