NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-209

COMMONWEALTH

vs.

DELANEAU PIERRE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted, after a jury trial, of murder, G. L. c. 265, § 1, on the theories of murder in the second degree (second degree murder), and felony-murder in the second degree (second degree felony-murder). The jury also convicted the defendant of unlawful possession of a firearm (which served as the predicate for the murder conviction on the basis of second degree felony-murder), pursuant to G. L. c. 269, § 10 (a), unlawful possession of a loaded firearm pursuant to G. L. c. 269, § 10 (n), and unlawful possession of ammunition pursuant to G. L. c. 269, § 10 (h).[1] The possessory convictions were dismissed at sentencing based on the judge's understanding

---

[1] The defendant was acquitted on charges of murder in the first degree (under theories of both premeditation and felony-murder) and armed assault with intent to rob.

of the felony-murder merger doctrine.[2]  See Commonwealth v.

Foster, 471 Mass. 236, 244 (2015) (underlying felonies dismissed

when "conviction of the predicate felony is duplicative as a

lesser included offense of the homicide").

In this consolidated appeal, the defendant appeals from his

murder conviction and from the denial of his motion to set aside

the verdict or for a new trial and motion for reconsideration of

that motion.  After oral argument occurred in this appeal, the

Supreme Judicial Court issued Commonwealth v. Guardado, 491

Mass. 666 (2023) (Guardado I).  We accordingly requested

supplemental memoranda from the parties as to whether Guardado I

was implicated in this appeal and, if so, how.  The parties

responded by jointly requesting a stay to permit the

Commonwealth to pursue a motion for reconsideration of Guardado

I in the Supreme Judicial Court.  We allowed that motion, and

the appeal was accordingly stayed until the Supreme Judicial

---

[2] The judge's understanding of the merger doctrine was incorrect.
Because the defendant was convicted of murder on multiple
theories, the underlying possession convictions should not have
been dismissed.  See Commonwealth v. Foster, 471 Mass. 236, 244
(2015) ("where, as here, a defendant is convicted of murder in
the first degree on a theory of felony-murder, and also is
convicted of murder in the first degree on another theory, and
where we affirm the convictions on both theories, the conviction
of the predicate felony is not duplicative, and the felony
conviction stands").  However, the Commonwealth did not object
below, nor does it argue error in this regard on appeal.  The
issue is accordingly waived.

Court issued Commonwealth v. Guardado, 493 Mass. 1 (2023) (Guardado II), at which point we again solicited additional memoranda from the parties. In response, the parties have both taken the position that, in light of Guardado I and Guardado II, the evidence failed to support the conviction of murder on the theory of second degree felony-murder because the Commonwealth did not introduce any evidence of lack of licensure. We agree.

What remains of this appeal, therefore, are the defendant's arguments vis-à-vis his conviction under the theory of second degree murder. Those arguments are: (1) whether racial discrimination factored into jury selection or composition; (2) whether the evidence was sufficient to permit the jury to find beyond a reasonable doubt that he acted with malice; and (3) whether trial counsel's failure to ask that the jury be instructed on manslaughter constituted ineffective assistance of counsel warranting a new trial.[3] We affirm the second degree murder conviction.

1. Jury composition. The defendant argues that racial discrimination affected the composition of the jury in two ways

---

[3] Because the evidence of murder on the theory of second degree felony-murder cannot support the conviction as a consequence of Guardado I and Guardado II, there is no need to consider the defendant's argument of instructional error on that theory.

and that his conviction must be reversed as a result.[4]  The defendant first argues that the judge erred in allowing the prosecutor to exercise a peremptory challenge to juror no. 74, who was Black, without going beyond the first step of the Batson-Soares inquiry.  See Batson v. Kentucky, 476 U.S. 79 (1986); Commonwealth v. Soares, 377 Mass. 461, cert. denied, 444 U.S. 881 (1979), overruled in part by Commonwealth v. Sanchez, 485 Mass. 491, 511 (2020).  More specifically, the defendant claims that he satisfied his burden to establish a prima facie showing of discriminatory purpose and, accordingly, the judge erroneously terminated the Batson-Soares inquiry prematurely, resulting in structural error.  In the alternative, the defendant argues that we should abandon the first prong of the Batson-Soares framework entirely.  This argument has fairly recently been rejected by the Supreme Judicial Court.  See Sanchez, 485 Mass. at 513-514 ("we do not join those States that have eliminated entirely the first step of Batson, . . . in accordance with our long-standing jurisprudence and the Federal standard").[5]  Secondly, the defendant argues that the judge

---

[4] The defendant does not challenge the process by which the venire was constituted, nor does he challenge the racial composition of the venire.

[5] This court has "no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided."  Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485 (2003).

4

should have allowed the defendant's request that the only Black juror be removed from the random drawing to select alternate jurors before deliberations.

a.  Juror no. 74.  Jury selection took place over two days using the following process.  The judge first posed broad questions to the entire venire.  The judge then called individual prospective jurors to the sidebar, where the judge conducted individual voir dire following up on any responses elicited during the general questioning.  The judge also permitted counsel to ask follow-up questions.  The judge then determined whether to excuse the juror on his own initiative and, if he did not do so, allowed the parties to challenge the potential juror for cause.  Once the jury box was filled with qualified jurors, the judge allowed the parties to exercise peremptory challenges.  This process was then repeated as necessary to fill any vacancies created by the exercise of peremptory challenges.

The prospective juror at the heart of the defendant's Batson-Soares challenge was juror no. 74.  During her individual voir dire, juror no. 74 acknowledged that she had suffered from a drug addiction and that her son had been tried and recently acquitted in the same court house that served as the venue for the defendant's trial.  Despite that, she stated that she could

5

be a fair and impartial juror.  The prosecutor moved to challenge juror no. 74 for cause, stating:

> "she has related to the court a very fresh case right here in the Superior Court prosecuted by my office.  I would suggest that she certainly would harbor some bias or prejudice towards the prosecuting office that brought her son to trial in Brockton Superior Court, particularly where it just happened Tuesday, presumably last week, here in this very courthouse."

The defendant responded that juror no. 74 was the only Black juror, and that "her answers were all that she could be fair and impartial to both sides."  The judge declined to excuse juror no. 74 for cause, but he remarked that "certainly the Commonwealth can exercise a peremptory" at the appropriate time.  When that time arrived, the prosecutor as foretold peremptorily challenged juror no. 74.  Defense counsel objected, stating:

> "I want to make a challenge to 74.  I know there's a separate reason for this but I think that her answers stand.  Her answers are that she could be fair and impartial.  I think there's three, but I think under Soares I can make a challenge even though there's only one."

The judge responded that he "[didn't] think that's a pattern," and dismissed juror no. 74.

"The use of peremptory challenges to exclude prospective jurors solely because of bias presumed to derive from their membership in discrete community groups is prohibited both by art. 12 [of the Massachusetts Declaration of Rights] and the equal protection clause [of the Fourteenth Amendment to the United States Constitution]" (citations omitted).  Commonwealth

6

v. Ortega, 480 Mass. 603, 605 (2018).  The exercise of a peremptory challenge is presumed proper; to rebut that presumption, "the challenging party 'must make out a prima facie case that it was impermissibly based on race or other protected status by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose.'"  Commonwealth v. Kozubal, 488 Mass. 575, 580 (2021), quoting Commonwealth v. Jackson, 486 Mass. 763, 768 (2021).  In some circumstances, "a single peremptory challenge may be sufficient to rebut the presumption, especially where 'the challenged juror is the only member of his or her protected class in the entire venire.'"  Commonwealth v. Issa, 466 Mass. 1, 9 (2013), quoting Commonwealth v. Prunty, 462 Mass. 295, 306 n.15 (2012).  "In determining whether a prima facie case of discriminatory purpose has been established, a judge may consider all relevant circumstances."  Commonwealth v. Carter, 488 Mass. 191, 196 (2021), citing Batson, 476 U.S. at 96-97.  These circumstances include:

> "(1) the number and percentage of group members who have been excluded from jury service due to the exercise of a peremptory challenge; (2) any evidence of disparate questioning or investigation of prospective jurors; (3) any similarities and differences between excluded jurors and those, not members of the protected group, who have not been challenged (for example, age, educational level, occupation, or previous interactions with the criminal justice system); (4) whether the defendant or the victim are members of the same protected group; and (5) the composition of the seated jury" (footnotes omitted).

7

Sanchez, 485 Mass. at 512.  Once the presumption has been rebutted, "the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it.  The judge must then determine whether the explanation is both 'adequate' and 'genuine.'" (Citation omitted.)  Commonwealth v. Oberle, 476 Mass. 539, 545 (2017).  Although "the possibility of an objective, group-neutral explanation for the strike," Commonwealth v. Jones, 477 Mass. 307, 322 (2017), is more properly applicable at the second and third stages of the Batson-Soares framework, "a readily apparent, group-neutral reason that already has been raised by the striking party in a for-cause challenge . . . might cut against an inference of discriminatory intent."  Sanchez, supra at 513 n.17.  "An appellate court reviews the trial judge's decision to allow the juror to be struck for abuse of discretion."  Jones, supra at 319-320.

The defendant correctly argues that he was not required to prove a pattern of exclusion to establish a prima facie case that a discriminatory purpose was behind the Commonwealth's peremptory challenge to juror no. 74.[6]  See Kozubal, 488 Mass. at

[6] The judge's explanation for ending the Batson-Soares inquiry at the first stage on the ground that he didn't "think that's a pattern" does not reflect current jurisprudence.  The specific language of Soares, 377 Mass. at 490, requiring defendants to

580 ("The issue is not whether there is a pattern of improper challenges, but whether a single challenge is based impermissibly on a juror's membership in a protected group"). And we acknowledge that certain circumstances surrounding juror no. 74 could support an inference of discriminatory intent, including that the defendant and juror no. 74 are both Black, and that juror no. 74 was the only Black prospective juror seated in the jury box when the peremptory challenge was exercised.

But even at the first stage of Batson-Soares, the judge was permitted to consider the prosecutor's previously stated race-neutral explanation for seeking to have juror no. 74 struck for cause:  the same district attorney's office had tried juror no. 74's son in the same court house only one week before the defendant's trial, and the prosecutor was concerned the juror would hold resulting bias against the prosecutor's office.  The defendant does not now, nor did he contemporaneously, contest

---

show that "a pattern of conduct has developed whereby several prospective jurors who have been challenged peremptorily are members of a discrete group" to make a prima facie case was retired six years after the defendant's trial.  See Sanchez, 485 Mass. at 511.  Nevertheless, the Supreme Judicial Court explained in Sanchez that it had previously "made the two-part first-step inquiry of Soares, which predated Batson, conform to Federal usage," and explicitly adopted the Federal language: "the presumption of propriety is rebutted when the totality of the relevant facts gives rise to an inference of discriminatory purpose" (quotation and citation omitted).  Sanchez, 485 Mass. at 511.

9

the legitimacy of the prosecutor's given explanation. Moreover, the record in no way suggests that juror no. 74 faced any disparate questioning or inquiry during individual voir dire, or that she was treated differently from any other prospective juror with a similar experience or connection with the district attorney's office.[7] In addition, juror no. 74 was not the only Black member of the venire.

Considering the relevant circumstances in their totality, the judge did not abuse his discretion by ending the Batson-Soares inquiry at the first stage, thereby allowing the prosecutor's peremptory challenge to juror no. 74 without first repeating her race-neutral reasons for doing so.

    b. Juror no. 34. General Laws c. 234A, § 68

> "requires that, to select an alternate juror, 'the court shall direct the clerk to place the names of all of the available jurors except the foreperson into a box or drum and to select at random the names of the appropriate number of jurors necessary to reduce the jury to the proper number of members required for deliberation in the particular case.'"[8]

---

[7] Arguing otherwise, the defendant points to juror no. 24, who the prosecutor did not challenge despite her brother's drug-related arrest. Juror no. 24's brother, however, was arrested twenty-five years before the defendant's trial. She was not similarly situated to juror no. 74, whose son had been acquitted a week prior.

[8] The judge prudently empanelled sixteen jurors at the outset of this multi-day murder trial. See G. L. c. 234A, § 68 ("In every twelve-person jury case, the court shall impanel at least two additional jurors").

10

Commonwealth v. Santa Maria, 97 Mass. App. Ct. 490, 498 (2020), quoting G. L. c. 234A, § 68. The judge followed the mandated statutory procedure. Nonetheless, the defendant argues error, on the ground that the judge erred as a matter of law by not asking the prosecutor if she would stipulate to excluding juror no. 34 (who was Black) from the random draw.[9]

Juror no. 34 was selected during the second day of jury selection over the prosecutor's peremptory challenge.[10] As the

_____

[9] The defendant's argument relies on the last sentence of § 68, see G. L. c. 234A, § 68 ("Nothing in this section shall prevent the court from entering a valid judgment based . . . upon procedures other than that specified in this section where all parties have by stipulation agreed to such . . . procedures"), as well as a footnote in Santa Maria, 97 Mass. App. Ct. at 498 n.12. Contrary to the defendant's suggestion, however, Santa Maria does not favor or encourage deviations from the statutorily mandated procedure for selecting alternate jurors. Rather, Santa Maria explicitly cautions against "the use of nonrandom procedures." Id. at 499. The defendant's argument, which, if adopted, would encourage judges to ask if parties would stipulate to which jurors should (or should not) be considered for alternate selection to ensure specific demographic representation would not "promote public confidence in the administration of justice," id., nor does it find support in this Commonwealth's case law. See, e.g., Commonwealth v. Arriaga, 438 Mass. 556, 562 (2003) ("a requirement that each jury include members of every group in the community is impracticable"); Commonwealth v. Mora, 82 Mass. App. Ct. 575, 579 (2012) ("there is no right to the particular impartial jurors [who] the [defendant] speculates may be most favorably disposed to his defense" [quotation omitted]).

[10] The defendant made a Batson-Soares objection to the peremptory challenge of juror no. 34, referencing his earlier challenge to juror no. 74 as the basis. The judge stated that,

11

case was to be submitted to the jury, the judge instructed the clerk to reduce the number of deliberating jurors to twelve. Before the clerk randomly selected the alternate jurors, the defendant requested that the judge eliminate juror no. 34 from alternate consideration "given the racial composition of the jury." The judge responded that "[i]t's not my practice to fool around with the system. I don't think there is any statutory authority and I'm not going to do it. I note your objection." Juror no. 34 was then randomly selected as an alternate juror and did not deliberate on the outcome of the case. There was no error of law; the judge precisely followed the prescribed statutory procedure in selecting alternate jurors.

---

"there are two other potential jurors that haven't been called. There is one African American in the jury box. One African American has been challenged. Very few African Americans in this pool. And I make the finding under Soares that there's been a pattern of exclusion of African American, blacks, on the jury."

The judge remarked that he thought the prosecutor had exercised a peremptory challenge because juror no. 34 had expressed a concern that there were very few Black people in the venire, which the judge did not think was "a basis for excluding her." The prosecutor responded that the peremptory challenge was due to juror no. 34's admission that juror no. 34 was attending Alcoholics Anonymous and was in therapy for addiction-related issues, and suggested that juror no. 34 had "a bias and a prejudice against the process itself." The judge did not accept the prosecutor's stated reasons, reiterated that juror no. 34 could be a fair and impartial juror, and overruled the peremptory challenge.

12

2.  Sufficiency of the evidence.  The defendant argues that the evidence was insufficient to permit the jury to find beyond a reasonable doubt that he acted with malice.  We disagree.[11] "In assessing the sufficiency of the evidence, we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Commonwealth v. Davis, 487 Mass. 448, 462 (2021), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "Proof of the essential elements of the crime may be based on reasonable inferences drawn from the evidence, . . . and the inferences a jury may draw need only be reasonable and possible and need not be necessary or inescapable" (citation omitted).  Commonwealth v. Kapaia, 490 Mass. 787, 791 (2022).  "A conviction of murder in the second degree requires proof, beyond a reasonable doubt, that a defendant committed an unlawful killing with 'malice'" (citation omitted).  Commonwealth v. Fahey, 99 Mass. App. Ct. 304, 307 (2021).

> "Malice can be established by proving any of three facts, or 'prongs':  (1) the defendant intended to cause the

---

[11] The defendant filed a motion for a required finding of not guilty at the close of the Commonwealth's presentation of evidence, renewing that motion at the close of all evidence, but those motions were limited to the charge of murder in the first degree.  The defendant did not challenge the sufficiency of the evidence with respect to second degree murder until his postconviction motion to set aside the verdict or, in the alternative, for a new trial.

13

victim's death; (2) the defendant intended to cause grievous bodily harm to the victim; or (3) the defendant committed an intentional act which, in the circumstances known to the defendant, a reasonable person would have understood created a plain and strong likelihood of death."

Commonwealth v. Earle, 458 Mass. 341, 346 (2010).

The evidence permitted the jury to find the following. On June 2, 2011, the victim and his brother picked up a friend from his home in Brockton. The brother was driving, the victim sat in the front passenger's seat, and the friend sat in the backseat on the passenger's side. The trio drove to nearby 33 Harvard Street, intending to purchase 200 Percocet pills from the defendant, from whom they had purchased 100 Percocet pills on a prior occasion.

Upon arriving at 33 Harvard Street, the brother parked in a parking lot at the end of a long driveway, leaving the vehicle running while awaiting the defendant. The defendant entered the vehicle and immediately pulled out a gun, cocked it, pointed it at the victim's head at close range, and demanded that the others "give [him] all their shit." The friend asked the defendant if he was serious, then quickly rushed out of the car. The victim told the defendant that he was not getting anything and screamed at his brother to drive. The brother hesitated at first, but complied at the victim's continued urging. The brother tried to swerve the car to "get the gun off my brother's head," which caused him to drive the car into a tree, at which

14

point the brother heard one gunshot.  The brother saw the defendant hopping over a fence; the victim was slouched down, with "blood gushing out" of his head.  The victim died from his wounds several hours later.[12]

The defendant, citing Commonwealth v. Colas, 486 Mass. 831, 837 (2021), contends that an intent to kill cannot be inferred solely from the act of pointing a gun at another person.  But viewing the evidence in the light most favorable to the Commonwealth, the defendant did not merely point a gun at the victim -- he intentionally pointed a loaded, cocked gun at the victim's head at close range immediately upon entering an enclosed space with the intent to commit a robbery.  A reasonable jury could find that the defendant exhibited an intent to kill the victim by readying the firearm he was pointing at the victim's head such that it "could be fired at any moment."  Commonwealth v. Tavares, 471 Mass. 430, 436 (2015).

Moreover, the same action created a plain and strong likelihood of death.  See Commonwealth v. Childs, 445 Mass. 529, 533 (2005) ("cocking a loaded gun and pointing it into a car in which three people are seated creates a plain and strong likelihood of death").  To put it mildly, the defendant's action

---

[12] The victim was also shot in his left thigh.

15

posed an obvious risk, and a jury could reasonably infer the defendant acted with malice, thus sustaining the defendant's conviction for murder in the second degree.

3. Ineffective assistance of counsel. Finally, the defendant argues that his motion for a new trial should have been allowed because his trial counsel was ineffective for failing to request jury instructions on both voluntary and involuntary manslaughter. "On appeal from a ruling on a motion for a new trial, we review for 'a significant error of law or other abuse of discretion.'" Commonwealth v. Harris, 101 Mass. App. Ct. 308, 311 (2022), quoting Commonwealth v. Grace, 397 Mass. 303, 307 (1986). We agree with, and have little to add to, the motion judge's analysis that no reasonable view of the evidence presented at trial supported giving a jury instruction on either voluntary or involuntary manslaughter.

"Under the familiar Saferian test, a defendant is denied constitutionally effective assistance of counsel if the representation fell 'measurably below that which might be expected from an ordinary fallible lawyer,' and that the performance inadequacy 'likely deprived the defendant of an otherwise available, substantial ground of defence.'" Commonwealth v. Kolenovic, 471 Mass. 664, 673 (2015), quoting Commonwealth v. Saferian, 366 Mass. 89, 96 (1974). Failure to request an instruction to which the defendant is not entitled

16

does not constitute ineffective assistance of counsel.  See, e.g., Commonwealth v. DeMarco, 444 Mass. 678, 685 (2005); Commonwealth v. Moore, 92 Mass. App. Ct. 40, 49 (2017).

"A manslaughter instruction is required if the evidence, considered in the light most favorable to a defendant, would permit a verdict of manslaughter and not murder.  Voluntary manslaughter is an unlawful killing arising not from malice, but from sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense" (quotations and citations omitted).  Commonwealth v. Garcia, 482 Mass. 408, 410-411 (2019).  The uncontroverted testimony, even in the light most favorable to the defendant, was that the defendant was the aggressor from the moment he entered the vehicle, cocked his firearm, and held it to the victim's head.  The defendant's theory of the case -- that the victim and his brother provoked the defendant, who was trapped in an errantly driven vehicle and acted either in self-defense or by accident -- is purely speculative and uncorroborated by the evidence.  The defendant was not entitled to an instruction based "on a hypothesis not supported by the evidence" (citation omitted).  Commonwealth v. Pina, 481 Mass. 413, 422 (2019).

The same rationale applies to the defendant's argument that he was entitled to an involuntary manslaughter instruction.

17

"An instruction on involuntary manslaughter is required
where any view of the evidence will permit a finding of
manslaughter and not murder.  When it is obvious, however,
that the risk of physical harm to the victim created a
plain and strong likelihood that death will follow, an
instruction on involuntary manslaughter is not required"
(citations omitted).

Commonwealth v. Pierce, 419 Mass. 28, 33 (1994).  We need go no further than to observe that the defendant's decision to ready a loaded firearm and aim it at the victim's head created a plain and strong likelihood that death would result and that, as a result, he was not entitled to an instruction on involuntary manslaughter.

Conclusion.  Although we conclude that the evidence was insufficient to support the defendant's conviction on the theory of felony-murder in the second degree, we affirm the defendant's judgment of conviction on the theory of murder in the second degree.  We also affirm the March 19, 2018 order denying the defendant's motion to set aside the verdict, or for a new trial,

as well as the December 5, 2019 order denying the defendant's motion to reconsider the denial of that motion.

So ordered.

By the Court (Meade,
 Wolohojian & Walsh, JJ.[13]),

Assistant Clerk

Entered:  January 19, 2024.

---

[13] The panelists are listed in order of seniority.