NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1210

COMMONWEALTH

vs.

EDUARDO M. MENDEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant was convicted of assault and battery on a person protected by an abuse prevention order, in violation of G. L. c. 265, § 13A (b) (iii); and violation of an abuse prevention order, in violation of G. L. c. 209A, § 7.[1]  On appeal, he argues the judge erred (1) in denying his request for an instruction on necessity, (2) in not providing an instruction on specific unanimity, and (3) in the jury selection process.  We affirm.

---

[1] The defendant was found not guilty of one count of assault on a family or household member, one count of kidnapping, three counts of kidnapping of a child, and one count of intimidation of a witness.  One count of kidnapping of a minor by a relative was dismissed pretrial.

Background.  1.  Commonwealth's case.  The defendant and the victim previously dated and had two children together.  The victim described her relationship with the defendant as "sweet" but "controlling with fear."  By July 2022, two years after they had broken up, the victim and her children had an abuse prevention order against the defendant, pursuant to G. L. c. 209A.  On July 22, in violation of the order, the defendant called the victim on her cell phone.  The defendant sounded very upset and told the victim that he was going to look for her.  About an hour later, the victim left her apartment with her four children to walk to a nearby Wendy's restaurant for dinner.  As they walked past the post office, the victim noticed the defendant's van in the parking lot.  The defendant got out and told the victim to "come here."  As she approached, the defendant starting yelling at the victim to get in the van.  The victim and her children got into the van because the victim was scared of the defendant.

Once the victim was in the front passenger's seat, the defendant began calling her a bitch and accusing her of sleeping with other men.  The defendant then started driving to the gas station.  As he drove, he would go fast and then slow, while continuing to yell at the victim.  Once at the gas station, the defendant did not park or stop the van.  The victim told the

2

defendant to let her go. She tried to open the car door to leave, but the defendant tried to grab onto her to prevent her from getting out.

After leaving the gas station, the defendant drove to a CVS pharmacy (CVS) about a block away. The victim's children were crying and screaming for the defendant to stop. The victim continued to tell the defendant to let her out. At CVS, the defendant parked and shut off the van's engine. The victim tried to get out, but the defendant was pulling and holding onto her, telling her, "[d]on't leave." As she was opening the door and the defendant was pulling her, she hit her head on the window. The defendant then let go, and the victim took off running. The defendant got out and started chasing the victim. The children got out of the van as well.

A woman sitting in her car noticed the victim walking quickly through the parking lot, followed by the defendant. The woman saw the defendant grabbing at the victim and trying take the victim's phone from her. The woman called out to the victim to ask if she needed help. The victim walked quickly to the woman's car, and the defendant followed. The woman told the defendant that she was calling the police. The defendant told the woman not to call the police and ran back to his van before driving away. From the time the victim and her children got

3

into the van at the post office and out of the van at CVS, it was about twenty to thirty minutes.

2. _Defendant's case_. The defendant testified in his own defense. He explained that he and the victim had planned to meet up at the post office so that he could take her and the children out to eat and bring one of his children to the store to get her medicine. Once they were in the van and he started driving, the defendant claimed the victim "lost her cool." He wanted to continue with the plan, which was to get the children "freezie[s]" at the gas station, so he drove them there. When they realized the gas station did not have the right flavor, the victim asked the defendant to drop them off where he had picked them up, and he agreed.

The defendant testified that as he continued to drive, the victim became aggravated and opened the door to jump out. The defendant explained that he grabbed the victim's wrist so that she would not jump out. He then stepped on the gas to "close the door." He continued driving toward CVS, which was about one to two minutes away. Once parked at CVS, the defendant stated that he grabbed the victim's wrists again because she was hitting herself. The victim then opened the door and left. In the parking lot, the defendant grabbed and pulled the victim to try to bring her back to the van because she was "making a

scene."  When the woman in the parking lot told the defendant that she was calling the police, the defendant asked her not to and left.

Discussion.  1.  Necessity instruction.  Immediately following the defendant's testimony, counsel requested a jury instruction on the defense of necessity, suggesting that the defendant only assaulted the victim by grabbing her wrist to prevent her from jumping out of the moving vehicle.  On appeal, the defendant argues the judge erred when she denied this request.  Where the defendant "requested such a supplemental instruction, we review for prejudicial error."  Commonwealth v. Toolan, 490 Mass. 698, 708 (2022).

The common-law defense of necessity "exonerates one who commits a crime under the 'pressure of circumstances' if the harm that would have resulted from compliance with the law . . . exceeds the harm actually resulting from the defendant's violation of the law" (citation omitted).  Commonwealth v. Kendall, 451 Mass. 10, 13 (2008).  Such a defense is only available where the defendant meets his initial burden to present "some evidence" on each of the following four elements:

"(1) the defendant is faced with a clear and imminent danger, not one which is debatable or speculative; (2) the defendant can reasonably expect that his action will be effective as the direct cause of abating the danger; (3) there is [no] legal alternative which will be effective in abating the danger; and (4) the Legislature has not acted

5

to preclude the defense by a clear and deliberate choice regarding the values at issue" (citation omitted).

Id. at 13-14.

Here, viewing the defendant's testimony in the light most favorable to him, see Commonwealth v. Pike, 428 Mass. 393, 400 (1998), the defendant grabbed the victim's wrist and pulled her toward him because she was opening the door of a moving vehicle to jump out.  The defendant thus succeeded in showing "some evidence" of the first element -- that there was a clear and imminent danger.  Kendall, 451 Mass. at 14.  However, as the judge reasonably concluded, the defendant offered no evidence of the third element -- that any lawful alternative to grabbing the victim, such as slowing down or stopping to let her out, was unavailable.  See Pike, supra at 401, quoting Commonwealth v. Brugmann, 13 Mass. App. Ct. 373, 380 (1982) (with respect to third element, "it is up to the defendant to make himself aware of any available lawful alternatives, 'or show them to be futile in the circumstances'").  In fact, the defendant testified that as the victim was trying to open the door, not only did he fail to slow down, he "step[ped] on the gas."  As described by the witnesses, the area in which this occurred was not a high-speed roadway; rather, it was an area lined with a gas station, a CVS, and a Wendy's.  The defendant failed to present any evidence that slowing down or pulling over in such a location was

6

impossible or futile.  See Pike, supra.  Accordingly, the judge

made no error in refusing to provide an instruction on

necessity.[2]

2.  Specific unanimity.  The defendant claims that although

he was charged with only one count of assault and battery on a

person protected by an abuse prevention order, he committed at

least three assault and batteries according to the testimony

(including his own) -- when he grabbed the victim twice in the

car, and when he grabbed and pulled her in the CVS parking lot.[3]

Accordingly, he argues that the judge erred in not providing the

jury with an instruction on specific unanimity.  Because the

defendant did not request the instruction, we review for a

substantial risk of a miscarriage of justice.[4]  Commonwealth v.

Erazo, 63 Mass. App. Ct. 624, 630 (2005).

_____

[2] With respect to the other assaultive conduct the defendant
admitted to, we note that he also failed to show any evidence of
the lack of a lawful alternative or any imminent danger involved
when he grabbed the victim's wrist to stop her from "hitting
herself" or when he grabbed the victim in the parking lot to
stop her from "making a scene."  See Kendall, 451 Mass. at 13-
14.

[3] As the prosecutor stated in closing, the Commonwealth's
evidence showed that the defendant grabbed the victim "more than
one time" in the van.  We note that the Commonwealth argued that
the defendant's conduct outside the van in the CVS parking lot
constituted an assault on a family or household member.  The
defendant was found not guilty of that assault charge.

[4] During the exchange following the Commonwealth's closing,
defense counsel failed to articulate a specific request or

A specific unanimity instruction informs the "jury that they must be unanimous as to which specific act constitutes the offense charged."  Commonwealth v. Conefrey, 420 Mass. 508, 512 (1995), quoting Commonwealth v. Keevan, 400 Mass. 557, 566-567 (1987).  However, "[w]hen a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required."  Commonwealth v. Thatch, 39 Mass. App. Ct. 904, 905 (1995).

Here, the defendant's acts against the victim occurred within a short period of time either in his van or immediately outside of it, making it a continuing course of conduct.  See Commonwealth v. Shea, 467 Mass. 788, 797-798 (2014) (continuing course of conduct involved two acts in violation of restraining order against one victim that were spatially and temporally close; lack of specific unanimity instruction did not cause substantial risk of miscarriage of justice).  Cf. Commonwealth

---

objection, making it unsurprising that the judge did not understand counsel to be asking for a specific unanimity instruction.  He also failed to object to the instructions on unanimity as given.  See Commonwealth v. McDuffee, 379 Mass. 353, 357 (1979) ("It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge in specific terms in order to give the judge an opportunity to rectify the error, if any").

8

v. Palermo, 482 Mass. 620, 630-631 (2019) (two threats, although close in time, were made to separate victims; specific unanimity instruction required); Conefrey, 420 Mass. at 514 (eight assaults occurring over one-year period in three apartments; specific unanimity instruction required).  A specific unanimity instruction was not required here, and therefore its absence did not give rise to a substantial risk of a miscarriage of justice.

3.  Jury selection.  The defendant claims that the judge violated his constitutional right to an impartial jury when she excused two prospective jurors and denied his for-cause challenge to two other jurors, forcing him to use his peremptory challenges on them.  We disagree.

"A trial judge is accorded considerable discretion in the jury selection process."  Commonwealth v. Clark, 446 Mass. 620, 629-630 (2006).  Accordingly, a judge's decision, including her finding of impartiality, "will not be overturned on appeal unless the defendant makes a clear showing of abuse of discretion or that the finding was clearly erroneous."  Commonwealth v. Emerson, 430 Mass. 378, 384 (1999), cert. denied, 529 U.S. 1030 (2000).

a.  Juror no. 92.  The defendant claims that the judge erred when she excused a prospective juror who failed to inform the court that she could not hear any of the questions asked of

9

the venire.  During juror no. 92's voir dire, she was asked to confirm that she had not answered yes to any of the venire questions.  She informed the judge that she had not answered the questions because she has "problems hearing."  The judge then told the parties that it was not her intention to repeat all of the venire questions separately to juror no. 92, and asked if either party had an objection to her excusing the prospective juror.  No one objected.

For the first time on appeal, the defendant argues this was structural error because juror no. 92 had a physical disability that could have been accommodated.  It is clear, however, that the judge did not excuse the prospective juror because she found "such service [was] not feasible" based on the juror's hearing issues.  Commonwealth v. Heywood, 484 Mass. 43, 46-47 (2020), quoting G. L. c. 234A, § 3.  Rather, the judge dismissed the juror because of her late disclosure that she had missed the entirety of the venire questioning.  Significantly, based on her admission to the judge that she "could not hear the whole -- what you were reading," the prospective juror also likely missed the judge's reading of the jury instructions on empanelment, including those on bias and the presumption of innocence.  Even were we to conclude the judge erred in not taking the time to repeat what she had already stated, "[u]nder G. L. c. 234A,

10

§ 74, a defect in jury empanelment does not warrant reversal unless a defendant objects to it as soon as possible after its discovery . . . and unless [he] has been specifically injured or prejudiced thereby" (quotation and citation omitted). Commonwealth v. Mora, 82 Mass. App. Ct. 575, 578 (2012). Given that the defendant failed to object and did not show any specific injury or prejudice as a result of juror no. 92's dismissal, his claim fails. See id.

b. Juror no. 93. The defendant next argues that the judge, over his objection, improperly dismissed a prospective juror who stated that he had a doctorate in cognitive neuroscience and expressed "serious concerns" about eyewitness testimony. Based on his answers to the jury questionnaire and the judge's follow-up questions, the judge found juror no. 93 not to be impartial and excused him.[5]

---

[5] On the juror questionnaire discussed at sidebar, the prospective juror answered "yes" to the question, "[I]s there anything else in your background experience, employment, training, education, knowledge or beliefs that might affect your ability to be fair and impartial?" He also wrote, "my professional education and training focused on issues of attention, perception, and memory. Therefore, I have serious concerns about eyewitness testimony, etcetera, I think." After she asked some follow-up questions, the judge told the prospective juror, "This criminal case is not for you, because I think you would bring a very, very specific lens to analyze . . . and being biased on a witness to . . . recall." The witness responded, "No, I agree."

Because the judge was "in a better position than an appellate court to evaluate impartiality, which requires a determination of credibility and demeanor," we cannot say that she abused her discretion in finding juror no. 93 not to be impartial. Mora, 82 Mass. App. Ct. at 578. This is especially so where the prospective juror himself expressed concerns and agreed with the judge about his bias. See Commonwealth v. Colton, 477 Mass. 1, 17 (2017) ("As a general principle, it is an abuse of discretion to empanel a juror who will not state unequivocally that he or she will be impartial"). Accordingly, the judge did not abuse her discretion in dismissing juror no. 93.

c. Juror no. 71 and juror no. 76. Lastly, the defendant argues that the judge erred when she did not dismiss two prospective jurors he challenged for cause and, instead, the defendant had to use two of his peremptory challenges, "leaving none for any other jurors." The defendant's claim fails at the outset as he has not shown any prejudice as a result of the allegedly erroneous dismissals. See Commonwealth v. McCoy, 456 Mass. 838, 842 (2010) (prejudice shown "by the use of a peremptory challenge to remove the juror who allegedly should have been excused for cause together with evidence that the defendant later was forced to accept a juror he would have

12

challenged peremptorily but was unable to because his peremptory challenges had been exhausted").  While it appears the defendant's two peremptory challenges were exhausted following the dismissal of juror no. 76, the defendant has failed to identify any sitting juror he would have challenged, or indeed any harm that came as a result of using all of his peremptory challenges.  Cf. Commonwealth v. Auguste, 414 Mass. 51, 58 (1992) ("the defendant has adequately shown that he would have exercised a proper peremptory challenge, had another been available, to exclude at least one of the sitting jurors"). Accordingly, his claim fails.

Judgments affirmed.

By the Court (Singh, Grant & Brennan, JJ.[6]),

Clerk

Entered:  April 30, 2025.

---

[6] The panelists are listed in order of seniority.

13